# UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF VIRGINIA
### NEWPORT NEWS DIVISION

_____

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 07-51040-SCS |
|  | ) |  |
| JONATHAN A. LOY, | ) |  |
|  | ) |  |
| *Debtor in a Foreign Proceeding.* | ) | Chapter 15 |

_____)

## MEMORANDUM OPINION

This matter came before the Court upon the Petition for Recognition of Foreign Main Proceeding filed by Jeremiah Anthony O'Sullivan ("O'Sullivan" or "Trustee"), the official receiver and trustee of the property of Jonathan A. Loy, (the "Debtor") in an English Insolvency Proceeding. The Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157(b) and 1334(b). Venue is proper pursuant to 28 U.S.C. § 1410. Upon consideration of the pleadings and arguments of the parties, the Court makes the following finding of facts and conclusions of law.

### I. Background

On November 1, 2007, this Court held a Preliminary Hearing and heard arguments on the Trustee's Petition for Recognition of Foreign Main Proceeding. The Debtor appeared Pro Se. After argument, the Court ordered interim recognition of the Foreign Proceeding pursuant to the authority provided by 11 U.S.C. § 1519 and set a Final Hearing for the Petition for Recognition of Foreign Main Proceeding on November 26, 2007. The Court held a Final Hearing on the Petition for Recognition of Foreign Main Proceeding on November 26, 2007, at which local counsel for the Trustee appeared, with O'Sullivan and U.K.-based counsel for O'Sullivan appearing via telephone. The Debtor appeared Pro Se.

On October 10, 2007, the Trustee, by counsel, filed a Petition for Recognition of Foreign Main Proceeding (the "Petition") under Chapter 15 of the Bankruptcy Code and a Memorandum of Law in Support of the Petition for Recognition of Foreign Main Proceeding.  The Petition sought recognition of an insolvency proceeding in England based upon a Bankruptcy Order on Creditor's Petition from the Exeter County Court, Devon, England, United Kingdom (the "English Order"), which adjudicated Loy as a bankrupt, as a Foreign Main Proceeding under 11 U.S.C. § 1517(a)(1). *See* Jonathan A. Loy, Case No. 07-51040-SCS, Docket Entry No. 3, Motion to Approve Petition for Recognition of Foreign Main Proceeding, filed October 28, 2007, at ¶ 11–12 [hereinafter "Motion to Approve"].  The Trustee attached to his Petition exhibits which claim to show proof of the English Order commencing a bankruptcy against Loy and O'Sullivan's appointment as Trustee in that proceeding.

The Trustee asserts that the English Order commencing the bankruptcy proceeding in the United Kingdom qualifies as a Foreign Main Proceeding as defined in 11 U.S.C. § 101(23), Motion to Approve, at ¶ 18–20, and that O'Sullivan qualifies as a Foreign Representative, as defined in 11 U.S.C. § 101(24), Motion to Approve, at ¶ 21–23.  Therefore, O'Sullivan claims that Loy's English bankruptcy proceeding is entitled to recognition by this Court as a foreign main bankruptcy proceeding under § 1517 of the Code.

The Debtor is a British citizen currently lawfully residing in Hampton, Virginia, and is the owner of undeveloped real property located in Hampton Virginia (the "Hampton Property").  Prior to residing in Virginia,  Loy resided and worked in Exeter, England.  In England, Loy and his brother formed Cider House Furniture in May 2000, a company that was to design and sell contemporary furniture made from wood.  Unfortunately, despite the Loys' best efforts, the business

was unable to continue, and in 2003 Loy, as an individual, made a Proposal for a Voluntary Arrangement with Creditors, pursuant to the Insolvency Act of 1986 (the "IVA") in the Exeter County Court, England. Under the terms of the IVA, Loy was to sell certain property in France to help satisfy his debts, while retaining the Hampton Property.  The IVA was approved on July 31, 2003, and eventually, O'Sullivan was appointed as Trustee.  By March 31, 2005, Loy informed the Trustee that he had accumulated additional debt and would not be able meet the terms of the IVA.  Subsequently, O'Sullivan filed a Default Petition with the Exeter Court requesting that it declare Loy a bankrupt.  That petition resulted in the English Order.

Prior to filing the Petition for Recognition in this Court, on February 1, 2007, the Trustee filed a Memorandum of Lis Pendens in the Circuit Court for the City of Hampton, Virginia, against the Hampton Property, noting the pending bankruptcy proceeding in Exeter County (the "lis pendens").  The lis pendens itself does not note that the proceeding was based in England.  The Trustee seeks to sell the Hampton Property in an attempt to satisfy Loy's debts in the English bankruptcy proceeding.  In response, the Debtor, by his counsel,[1] sought to file a Bill of Complaint to Quash the Memorandum of Lis Pendens, asserting that the Trustee could not properly file the lis pendens because the judicial proceeding upon which it is based was not in the United States.  The Motion to Quash was not filed prior to the filing of the Petition for Recognition.

At the preliminary hearing, the Pro Se Debtor argued that due to the Trustee's allegedly improper filing of the lis pendens, the equitable doctrine of unclean hands prevents the Trustee from obtaining any relief relating to the Hampton Property, including the recognition of the English

---

[1] Loy is represented by counsel concerning the lis pendens in Virginia state court; however, his counsel for that purpose is not admitted to the bar of this Court and accordingly has made no appearances here on behalf of Loy.

proceeding under Chapter 15.

The Debtor also provided the Court with an exhibit labeled as "Response to Motion by McGuire Woods on behalf of English Trustee O'Sullivan against the property of Mr & Mrs Loy." The exhibit lists several issues the Debtor takes with the Trustee's filing of the lis pendens against the Hampton Property.  First, the Debtor disputes the method which the Trustee used to file the lis pendens, alleging that he "concealed the foreign status" of the English proceeding when he filed the lis pendens, and further asserting that such a procedure was outside of the custom of the bankruptcy process.  Loy contends that the improper lis pendens prevented him from making use of the property, including taking a loan out against it, which would have provided funds sufficient to satisfy his obligation to the Trustee.  Further, he argues that the lis pendens impairs his and his family's ability to continue their residence in the United States, as development of the Hampton Property was central to the approval of the Loys' visa application.  Loy asserts that due to the Trustee's improper behavior, this Court should apply the equitable doctrine of unclean hands, reject the Trustee's Petition for Foreign Recognition, and dismiss this case.  Loy further seeks permission from this Court to commence a suit in Virginia state court to remove the lis pendens from the Hampton Property and recover damages for the allegedly wrongful filing of the lis pendens and damages incurred resulting from the slander to the Hampton Property's title.  Additionally, the Debtor provided the Court with a copy of an email exchange as an exhibit.  Loy asserts that the email shows the "Trustee's attempt to obtain funds by extortion [from Loy]."

On November 20, 2007, Loy filed a document entitled "Statement of Jonathan Loy in Support of Denial of Relief to English Trustee on Doctrine of Unclean Hands," which the Court docketed as a Response to the Trustee's Motion to Approve Petition for Recognition.  The response

4

states that Loy only had a $22,000.00 share of the Hampton Property, and that $170,000.00 of the funds used in the purchase price for the Hampton Property represented Mrs. Loy's interest in the property. Loy asserts that he was individually declared a bankrupt, and therefore his wife's interest in the Hampton Property remains outside of his bankruptcy estate. Additionally, Loy asserts that the Trustee illegally filed the lis pendens against the property, preventing him from securing a construction loan for the property. Loy offered the Trustee $22,000.00 to lift the lis pendens, claiming that this amount represented his share of the Hampton Property.

As Loy stated in his previous arguments before this Court, he again alleges that the Trustee was required to first file a Chapter 15 Petition for Recognition prior to filing a lis pendens on the Hampton Property in state court and further alleged that the underlying action upon which the lis pendens was based—the English Order—was statutorily impermissible. Further, Loy asserts that the English origin of the English Order was deliberately omitted from the lis pendens to conceal the nature of the action from the state court. Citing this Court's opinion *OSB Manufacturing Inc. v. Hathaway* (*In re Hathaway*), 364 B.R. 220 (Bankr. E.D. Va. 2007), the Debtor asserts that the Trustee's allegedly inappropriate conduct with regard to the lis pendens calls for the Court to invoke the doctrine of unclean hands and decline to recognize the foreign proceeding.

The Court held the Final Hearing on the Petition Recognition on November 26, 2007. The Trustee submitted, and the Court accepted without objection, numerous exhibits including a signed and sealed copy of the English Order and a copy of the Trustee's Declaration. The Trustee called Loy to testify under oath, where he conceded that the English Order did indeed adjudicate him a bankrupt and that O'Sullivan was appointed Trustee in that proceeding. In his argument, counsel for the Trustee, citing 11 U.S.C. § 1509(f), asserted that Chapter 15 does not require a party to first

5

seek a bankruptcy court's recognition of a foreign proceeding prior to asserting other claims in other courts in the United States.  Further, the Trustee argued that it was proper to file a lis pendens in this instance because under section 306 of the English Insolvency Act of 1986, all of a bankrupt's estate immediately vests in the trustee upon his appointment.  Therefore, the lis pendens was filed to serve as notice that the English Trustee had a claim of ownership to the Hampton Property, and that the English Order creating the Trustee's interest in the property cannot be used to prohibit him from filing the lis pendens to put the world on notice of his claim of ownership.  Finally, the Trustee—citing the cost to the estate from continuing litigation—requested that the Court enjoin Loy, under the authority provided by § 1521(a) of the Bankruptcy Code, from proceeding with his state court suit quashing the lis pendens and asserting a slander of title action against the Trustee.  If the Court chose not to enjoin those proceedings, the Trustee requested that the Court require the Debtor file those actions in this Court.

The Debtor, appearing Pro Se, presented his argument to the Court, which was identical to the argument made to the Court in his papers submitted on November 20, 2007.  Additionally, the Debtor disputed that the Hampton Property is property of the estate, contending that his wife's share of the assets from the sale of their marital home in England was used to purchase the property, and therefore her interest in the property was not property of his bankruptcy estate.

At the conclusion of the hearing, the Court took the matter under advisement.

On November 27, 2007, the Trustee filed a proposed Final Order with the Court.  On November 30, 2007, Loy filed a Response to the Trustee's proposed Final Order, objecting to it on the ground of unclean hands and unfairness.  Additionally, Loy challenges the Trustee's characterization of Loy's interest in the Hampton Property and the Trustee's request for an

injunction.

## II. Conclusions of Law

This appears to be a matter of first impression in the Fourth Circuit. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23, enacted Chapter 15 of the Bankruptcy Code, implementing the Model Law on Cross-Border Insolvency in the United States. *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 126 (Bankr. S.D.N.Y. 2007) [hereinafter *Bear Stearns*]. Chapter 15 allows a foreign representative of a foreign bankruptcy proceeding to apply for recognition of that foreign proceeding under the Bankruptcy Code. If the foreign proceeding qualifies for Chapter 15 recognition, "the foreign representative gains the capacity to sue and be sued in the United States courts and the authority to apply directly to a court in the United States for appropriate relief, and that all courts in the United States must grant comity or cooperation to the foreign representative." *Iida v. Kitahara* (*In re Iida*), 377 B.R. 243, 257 (B.A.P. 9th Cir. 2007); *see also* 11 U.S.C. § 1509(b) (2007). Moreover, upon recognition, § 1521 allows the foreign representative to petition the court for a host of relief available to a trustee under the Code. *See* 11 U.S.C. § 1521 (2007).

### A. Recognition of Foreign Proceeding

In order for a foreign proceeding to gain recognition within the framework of Chapter 15, the individual seeking recognition must be a "foreign representative," *id*. § 1515(a), defined by the Code as "a person . . . authorized in a foreign proceeding to administer the reorganization or liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding," *id*. § 101(24). Next, the foreign representative must apply "to the court for recognition of a foreign proceeding in which the foreign representative has been appointed by filing a petition for

recognition." *Id*. § 1515(a).  The representative is instructed to file along with the petition a certified copy or certificate of the decision commencing the foreign proceeding and appointing the foreign representative from the rendering jurisdiction.  *Id*. §§ 1515(b)(1)–(2).  In the absence of such evidence, the court may accept other evidence that such foreign proceeding exists.  *Id*. § 1515(b)(3). Additionally, the foreign representative's petition must include "a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative."  *Id*. § 1515(c). Finally, the Court must determine that the foreign proceeding at issue, as defined by § 101(23) of the Code, is either a "foreign main proceeding" or a "foreign nonmain proceeding."  *Id*. § 1517. Thus, a simple recognition of a foreign proceeding is insufficient, as a "foreign proceeding without specifying more (i.e., nondeclaration as to either 'main or nonmain') is insufficient as there are substantial eligibility distinctions and consequences."  *Bear Stearns*, 374 B.R. at 125.

Chapter 15 defines foreign main proceeding as "a foreign proceeding pending in the country where the debtor has the center of its main interest," 11 U.S.C. § 1502(4) (2007), while foreign nonmain proceeding is defined as "a foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment," *id*. § 1502(5).  Establishment means "any place of operations where the debtor carries out a nontransitory economic activity." *Id*. § 1502(2).

The Code fails to define "center of main interests" (the "COMI"), the term upon which foreign main proceeding turns.  Section 1516(c) instructs that in the case of an individual, however, the debtor's habitual residence is presumed, in absence of evidence to the contrary, to be the center of the debtor's main interests.  *Id*. § 1516(c).  While not defined in the Code, habitual is commonly used to mean "customary, usual." *Black's Law Dictionary* (8th ed. 2004).  Other courts have listed

factors that may be used to aid in fleshing out a debtor's COMI. *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006). Factors that are useful in instances where the debtor is an individual include: the location of a debtor's primary assets; the location of the majority of the debtor's creditors or a majority of creditors would be affected by the case; and the jurisdiction whose law would apply to most disputes. *See id.*; *see also Bear Stearns*, 374 B.R. at 128.

The foreign representative has the burden to show that the requirements for recognition of a foreign proceeding erected by Chapter 15 have been met. *In re SPhinX*, 351 B.R. at 117 (citing the legislative history of Chapter 15). Section 1516, however, allows a court to presume that "the certificate [submitted as evidence of a foreign proceeding] indicates the foreign proceeding is a foreign proceeding and that the person or body is a foreign representative," 11 U.S.C. § 1516 (a), and a court may also "presume that documents submitted in support of the petition for recognition are authentic, whether or not they have been legalized," *id.* at § 1516(b).

Based on the evidence presented, the Court is convinced that O'Sullivan meets the definition in § 101(24) of a foreign representative and that the English proceeding is a foreign proceeding under § 101(23). The exhibits the Trustee provided to the Court at the Final Hearing included a certified copy of the English Order declaring Loy a bankrupt and appointing O'Sullivan as Trustee of Loy's estate. O'Sullivan's petition that led to the English Order was filed under the English Insolvency Act of 1986, which has significant parallels to the United States Bankruptcy Code such that an action under the Insolvency Act meets the definition of foreign proceeding under § 101(23). *See In re Headington Invs. Ltd.*, 145 B.R. 151, 164 (Bankr. S.D.N.Y. 1992). Moreover, Loy, while testifying under oath at the November 26, 2007, Final Hearing stated that he was declared a bankrupt in the foreign proceeding and O'Sullivan was appointed Trustee in the matter. Accordingly, the

Court finds that O'Sullivan is the Trustee in Loy's English bankruptcy proceeding, and that proceeding is a foreign proceeding, as required by 11 U.S.C. § 1515.

B.  Determining Status as a Foreign Main Proceeding or Foreign Nonmain Proceeding

The Court must also determine whether the English proceeding is a main or nonmain proceeding.  In his petition the Trustee states, without more, that "the English Administration is without question [a] foreign main proceeding under section 1517 of the Bankruptcy Code."  But, as recognized by the *Bear Stearns* court, a foreign proceeding must be coded as either main or nonmain, hinging on whether the debtor's COMI is located in the foreign jurisdiction, or alternatively, whether the debtor has an establishment in the country where the foreign action is proceeding. *See Bear Stearns*, 374 B.R. 122, 126–27 (Bankr. S.D.N.Y. 2007); *see also* 11 U.S.C. §§ 1502(4)–(5).

Nevertheless, several factors counsel in favor of finding that the English proceeding is a foreign main proceeding.  First, the debtor's habitual residence is the United Kingdom, not the United States.  While Loy and family are currently lawfully residing in the United States, and currently own the Hampton Property, their visas are temporary.  Indeed, as Loy testified, he and his family must return to the United Kingdom in December 2007 to renew their United States visas.  Thus, the evidence before the Court requires it to conclude that Loy's habitual residence is the United Kingdom, and accordingly "presume[s it] to be the center of the debtor's main interests." 11 U.S.C. § 1516(c) (2007).  The Court is further convinced that the debtor's COMI is the United Kingdom based on the factors provided by the *SPhinX* court.  Based on the Trustee's exhibits accompanying his Petition for Recognition—particularly the documents submitted in support of Loy's IVA—almost all of Loy's creditors are located in the United Kingdom.  Both Loy's initial

10

IVA and later bankruptcy proceeding, as well as the authority under which the Trustee acts, is governed by English law.  Both of these factors weigh in favor of finding the English proceeding to be a foreign main proceeding.  The Debtor's assets are located in the United Kingdom, France, and the United States.  The Hampton Property is located in the United States, which weighs in favor of finding that the Debtor's COMI is not the United Kingdom.  This single factor, however, is insufficient to overcome the § 1516(c) presumption and the weight of the other factors.  Therefore, the Court finds that the Debtor's COMI is in the United Kingdom, and accordingly that the English proceeding qualifies as a foreign main proceeding under § 1502(4).

C.  Must a Court First Grant Foreign Proceeding Recognition Before the Foreign Representative Can Take Any Action Outside of the Bankruptcy Court?

1. Law

At the Final Hearing on recognition and in his Response to the Trustee's petition, Loy argues that Chapter 15 requires the Trustee to first file a Petition for Recognition prior to taking any further action.  Thus, the Debtor argues, by filing the lis pendens against the Hampton Property prior to filing the Chapter 15 petition the Trustee "short-circuited" the process required by Chapter 15, and should not now be able to avail himself of Chapter 15 recognition and the benefits of the Bankruptcy Code, but instead must be permanently enjoined from taking any further action in relation to the Hampton Property.

Section 1509 of the Code states that a "foreign representative may commence a case under section 1504 by filing directly with the court a petition for recognition of a foreign proceeding under section 1515." *Id*. § 1509(a).  This is seemingly qualified by subsection (c), which provides that "A request for comity or cooperation by a foreign representative in a court in the United States other

than the court which granted recognition *shall* be accompanied by a certified copy of an order

granting recognition under section 1517." *Id*. (emphasis added).  While § 1509(a) is seemingly

constructed in permissive terms ("a foreign representative *may* commence a case under section 1504

. . .."), when taken together with the mandatory language of § 1509(c), ("a request for comity or

cooperation in a Court of the United States . . . shall be accompanied by . . . an order granting

recognition"), § 1509 imposes a requirement on the foreign representative that he must first obtain

foreign proceeding recognition before enlisting the comity or cooperation of a court of the United

States.

This Court is persuaded by the reasoning of United States Bankruptcy Appellate Panel of the

Ninth Circuit in *In re Iida* that a foreign representative must first pass through the bankruptcy court

and receive Chapter 15 recognition of his foreign judgment prior to "request[ing] the comity or

cooperation . . . in a court in the United States." *See Iida v. Kitahara* (*In re Iida*), 377 B.R. 243, 257

(B.A.P. 9th Cir. 2007).  The *Iida* court reasoned that the drafters of Chapter 15 changed its language

from the Model Law upon which it was based such that instead of "a foreign representative is

*entitled* to apply directly to a court," *Model Law on Cross Border Insolvency*, Art. 9 (United Nations

Commission on International Trade Law) (emphasis added), § 1509 erects a structure in which the

foreign representative must first pass through the bankruptcy court by way of a foreign proceeding

recognition prior to applying to a court in the United States for relief requiring the comity or

cooperation of that court. *In re Iida*, 377 B.R. at 257.  "Congress specifically intended that control

of these questions be concentrated in the bankruptcy court." *Id*.  Further, Chapter 15 is unique in the

Bankruptcy Code in that it specifically instructs courts to consider the international origins of

Chapter 15 and apply Chapter 15 in a manner consistent with the application of the Model Law by

foreign jurisdictions. 11 U.S.C. § 1508 (2007). Therefore, to the extent that Congress changed the permissive nature of Model Law section 9 ("a foreign representative is entitled to apply directly to a court") to the mandatory construction contained in § 1509(c), this Court interprets the modification of language to indicate a desire by Congress to make Chapter 15 recognition a precursor to a foreign representative taking action that requires the comity or cooperation of a court in the United States. *See, e.g.*, *Koken v. Cologne Reinsurance (Barbados) Ltd.*, No. 1:CV-98-0678, 2006 WL 2460902, at *8 (M.D. Pa. Aug. 23, 2006) ("The legislature chose to adopt language different then [*sic*] that in the . . . model law. If the legislature had wanted to exclude reinsurance from the statute, it could have.").

The legislative history of Chapter 15 supports this interpretation. *See* H. Rep. 109-31(I) at 109 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 172 ("[Section 1509] imposes recognition of the foreign proceeding as a condition to further rights and duties of the foreign representative . . . . Subsections (b)(2), (b)(3), and (c) make it clear that [C]hapter 15 is intended to be the exclusive door to ancillary assistance to foreign proceedings."). Therefore, this Court holds that Chapter 15 recognition is required before a foreign representative seeks to enlist the comity or cooperation of a court in the United States.

Section 1509 is tempered by a qualification and an exception. The qualification, found in § 1509(c), only requires that a foreign representative obtain prior recognition if he seeks the comity or cooperation of a court in the United States. *See* 11 U.S.C. § 1509(c) (2007); *In re Iida*, 377 B.R. at 258. ("It is significant that the § 1509 requirement of prior permission by way of recognition by a bankruptcy court deals only with acts by a foreign representative who needs the assistance of a court in the United States."). Thus, by its terms, if a foreign representative does not seek to involve

13

a court's comity or cooperation, he need not first seek foreign proceeding recognition. *In re Iida*, 377 B.R. at 258. ("Nothing in the statute requires prior judicial permission for acts that do not implicate matters of comity or cooperation by courts. . . . It follows that [C]hapter 15 does not constrain a foreign representative from acts that do not require judicial assistance.").

Subsection (f) of § 1509 contains the exception to the requirement of § 1509 that a foreign representative's first step must be foreign proceeding recognition. It states that "the failure of a foreign representative to commence a case or to obtaining recognition under this chapter does not affect any right the foreign representative may have to sue in a court in the United States to collect or recover a claim which is property of the debtor."[2] 11 U.S.C. § 1509(f) (2007). Therefore, a foreign representative may—prior to or without obtaining prior permission of a bankruptcy court—sue to collect on a claim of the debtor, even if such suit implicates the comity or cooperation of a court. *See In re Iida*, 377 B.R. at 258. The legislative history of the statute indicates that this exception is to be narrowly applied. *See* H. Rep. 109-31(I) at 110–11 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 173 ("Subsection (f) provides a limited exception to the prior recognition requirement so that collection of a claim which is property of the debtor, for example an account receivable, by a foreign representative may proceed without commencement of case or recognition under this chapter.").

---

[2] Subsection (e) also seemingly provides an exception to the prior recognition requirement. It states: "Whether or not the court grants recognition, and subject to sections 306 and 1510, a foreign representative is subject to applicable nonbankruptcy law." 11 U.S.C. § 1509(e) (2007). The legislative history of the Chapter states that this subsection is intended to function identically to the manner which 28 U.S.C. § 959 affects domestic trustees, and thus is not germane to this discussion. *See* H. Rep. 109-31(I) at 109 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 172 ("Subsection (e) makes activities in the United States by a foreign representative subject to applicable United States law, just as 28 U.S.C. § 959 does for a domestic trustee in bankruptcy."); *see also* 28 U.S.C. § 959 (2007).

14

2. Factual Application

Based on the above interpretation of § 1509, O'Sullivan is required to first obtain judicial permission from this Court by way of foreign proceeding recognition prior to filing the lis pendens in the Circuit Court for the City of Hampton if that action requires comity or cooperation from that court. If the filing of the lis pendens does require comity or cooperation of a court, the trustee would be excused for failing to receive prior permission from this Court if the exception in § 1509(f) applies.

In order to determine whether the filing of a lis pendens requires the comity or cooperation of a court, a brief discussion of the nature of a lis pendens is required. "The effect of filing a lis pendens is to give notice of a pending suit to third parties." 1-37 Michie's Va. Jurisprudence on Real Estate § 2; *see also Hart v. United Va. Bank* (*In re Hart*), 24 B.R. 821, 824 (Bankr. E.D. Va. 1982) (questioned on other grounds) ("A memorandum of lis pendens is merely a notice to third parties that a claim has been asserted to the property described."); *Preston's Drive Inn Rest., Inc. v. Convery*, 154 S.E.2d 160, 163 (Va. 1967) (stating the purpose of Virginia's lis pendens statute is to "give notice to anyone who might deal with the property in the pending litigation."). Virginia Code § 8.01-268 provides the statutory authority for a party to file a lis pendens to provide notice to a subsequent party that "the action upon which the lis pendens is based seeks to establish an interest by the filing party in the real property described in the memorandum." Va. Code Ann. § 8.01-268(B) (2007). Thus, a lis pendens only "serves to warn others that rights which they may acquire will be subject to any valid judgment entered." *Bray v. Landergren*, 172 S.E. 252, 256–57 (Va. 1934) (citing *Houston v. Timmerman*, 21 Pac. 1037 (1889)); *see also Meliani v. Jade Dunn Loring Metro, LLC*, 286 F. Supp. 2d. 741, 745 (E.D. Va. 2003) ("Once recorded, the lis pendens binds

subsequent bona fide purchasers of the disputed property such that the subsequent purchaser, with or without actual notice of the lis pendens, takes subject to the outcome of the pending litigation."). One court, opining on the nature of lis pendens generally, noted that a "lis pendens has no specific separate existence apart from its basic function to advise a person who seeks to acquire an interest in property subject to a lis pendens that he will be bound by the outcome of the noticed litigation." *Greenpoint Mortgage Funding, Inc. v. Schlossberg*, 888 A.2d 297, 304 (Md. 2005).

The authority above establishes that a lis pendens is designed as a mechanism to provide notification to the world that pending litigation involving a particular piece of property exists, and that any interest acquired in that property is subject to the outcome of that pending litigation. Simply filing the lis pendens does not implicate the comity or cooperation of a court; rather, the filing of the lis pendens in a circuit court is a ministerial task conducted by the clerk of that court. *See* Va. Code Ann. § 8.01-268 (2007). A court does not get involved when a lis pendens is filed. As noted above, the lis pendens serves as constructive notice to any party who seeks to gain an interest in real property that such property faces pending litigation.

In the case of Loy, the Trustee's filing the lis pendens against the Hampton Property has not yet implicated the comity or cooperation of the Circuit Court of the City of Hampton. At this juncture, as counsel for the Trustee stated at the Final Hearing in this matter, by filing the lis pendens, he sought to put on notice any bona fide purchasers of the Hampton Property of his claim of ownership of the property. Filing a lis pendens under Virginia's statute no more involves the comity or cooperation of a court than if a plaintiff gives a potential bona fide purchaser actual notice

16

of pending litigation on a certain piece of property.[3]

Alternatively, it seems as though the subsection (f) exception to § 1509 applies to the Trustee's action in this instance.  Under the British Insolvency Act of 1986, all property wherever situated becomes vested in the debtor's estate upon declaration of an individual as a bankrupt and vests in the trustee immediately upon the trustee's appointment. Insolvency Act of 1986, 1986, pt. 9 c. 2 § 283; pt. 18 § 435; pt. 9 c. 4 § 306 (Eng.).  In this instance, upon the English court's declaration of Loy as a bankrupt, Mr. Loy's interest in the Hampton Property vested in the Trustee, such that the Trustee became the owner of Mr. Loy's interest in the property.  To the extent that the Trustee was attempting to put the world on notice of his ownership interest of the Hampton Property by filing the lis pendens, as asserted by counsel for the Trustee at the Final Hearing, the Court finds that the Trustee can be deemed to be taking the first step to "su[ing] in a court in the United States to collect or recover a claim which is the property of the debtor."  11 U.S.C. § 1509(f) (2007). Therefore, even if the filing of the lis pendens could be considered an act that requires the comity or cooperation of a court, it falls into the § 1509(f) exception to the requirement that he obtain prior approval from the bankruptcy court.

Finally, Chapter 15 fails to specify the consequences for failure to commence a Chapter 15 proceeding prior to taking action in relation to a foreign bankruptcy in a court in the United States. Loy asserts that the consequence of the Trustee's failure to obtain Chapter 15 recognition of his English case prior to filing the lis pendens should be a complete bar to any further action of the trustee.  The Code, however, does not demand such a drastic outcome.  Indeed, the Code does not

---

[3] It should be noted, however, that the Court at this time takes no position on the validity of the lis pendens.

provide any direction to the Court as to the consequences of proceeding in state court on the basis of a foreign court adjudication without prior bankruptcy court approval.

The lack of a guidance from the Code as to the result of the failure to first obtain Chapter 15 recognition, coupled with fact that the filing of a lis pendens does not require the comity or cooperation of a court, and the application of the § 1509(f) exception to prior approval requires the Court to conclude that the Trustee's failure to obtain prior bankruptcy court approval prior to filing the lis pendens in Virginia state court does not prohibit the Trustee from now gaining Chapter 15 recognition of the English proceeding.[4]

### D.  Unclean Hands

Loy also forcefully argues that the conduct of the Trustee relating to the filing of the lis pendens on the Hampton Property should cause the Court to invoke the doctrine of unclean hands, and this Court should use its equitable power to deny recognition.  "A court can deny relief under the doctrine of unclean hands only when there is a close nexus between a party's unethical conduct and the transaction on which that party seeks relief."  *Republic of Rwanda v. Uwimana* (*In re Uwimana*), 274 F.3d 806, 810 (4th Cir. 2001) (citing *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240 (1933)); *see also OSB Mfg. Inc. v. Hathaway* (*In re Hathaway*), 364 B.R. 220, 244 (Bankr. E.D. Va. 2007).  "The moving parties hands must be clean *with respect to the specific transaction to which he seeks relief.*" *In re Hathaway*, 364 B.R. at 244 (emphasis added).  Further, the conduct in question must be of a nature that actually commits a fraud upon the court itself, not

---

[4] It should be noted again this Court does not decide whether the filing of the lis pendens by the Trustee under the circumstances here was violative of Virginia state law.  The sole issue necessary for determination by this Court is whether the filing of the lis pendens by the Trustee prior to obtaining recognition pursuant to Chapter 15 prohibits subsequent recognition—which this Court concludes it does not.

necessarily one of the parties, such that the fraud will undermine the judicial process. *Id.*; *see also*

*Smith v. Cessna Aircraft Co.*, 124 F.R.D. 103, 106 (D. Md. 1989) (citing *Mas v. Coca-Cola Co.*, 163

F.2d 505, 507 (4th Cir. 1947)).   Thus, Loy is charged with the burden of showing that a close

connection exists between the allegedly erroneous filing of the lis pendens in the state court and

recognition of the English proceeding in this Court, and that such filing commits a fraud upon this

Court.

Even if the equitable defense of unclean hands is available as a defense for § 1517

recognition, the improper conduct by the Trustee which Loy alleges, if any, is insufficiently related

to the matter presently before the Court: whether the "formulaic" determination, *Bear Stearns*, 374

B.R. 122, 126 (Bankr. S.D.N.Y 2007), laid out in § 1517 of a foreign proceeding has been met.

Here, the conduct at issue relates to allegedly inadequate disclosures as to the origins of the English

Order upon which the lis pendens was based and the Trustee's failure to obtain foreign proceeding

recognition prior to filing the lis pendens in state court.   In this instance the allegedly improper

conduct of the Trustee is insufficiently related to whether the necessary facts are present for this

Court to recognize the English proceeding as a foreign main proceeding under § 1517.

Further, this Court's power to invoke the equitable defense of unclean hands "can only be

exercised within the confines of the Bankruptcy Code."   *Norwest Bank Worthington v. Ahlers*, 485

U.S. 197, 206 (1988).   "The statutory language of the Bankruptcy Code should not be trumped by

generalized equitable pronouncements, especially when Congress has been explicit when it intends

for courts to exercise equitable discretion in the bankruptcy arena.." *Welzel v. Advocate Realty Invs.*

*LLC* (*In re Welzel*), 275 F.3d 1308, 1318–19 (11th Cir. 2001) (noting that Congress provided courts

with explicit authorization to exercise equitable powers in §§ 365(d)(10), 502(j), and

524(g)(4)(B)(ii), while declining to include similar language in § 506(b)).  A law review article authored by Judge Ahart of the United States Bankruptcy Court for the Central District of California also strenuously argues that the equitable powers of a bankruptcy court are limited to Code provisions where Congress has authorized such powers. *See* Alan. M. Ahart, *The Limited Scope of Implied Powers of a Bankruptcy Judge*: *A Statutory Court, Not a Court of Equity*, 79 Am. Bankr. L.J. 1, 32–33 (2005) ("Thus, [a bankruptcy judge] should refrain from invoking the maxims of equity, such as the 'unclean hands' principle, unless she is authorized to do so by a specific provision of the Code, Title 28 or other applicable nonbankruptcy law.").

Congress did not include language in §§ 1509, 1515, or 1517 which suggests that a court is permitted to include equitable considerations in its determination of whether the prerequisites for foreign proceeding recognition have been met. This Court has previously declined to exercise general equitable powers when Congress has not previously given the courts explicit authorization to exercise equitable discretion.  *In re Silvus*, 329 B.R. 193, 220–21 (Bankr. E.D. Va. 2005) (declining to invoke equitable principles to permit the award of compensation to a Chapter 7 Trustee following the conversion of the case to one under Chapter 13 of the Code).  Despite Loy's invitation, this Court declines to change its approach when it is again presented with Code provisions that fail to permit the Court to exercise its general equitable powers.  Therefore, this Court will not apply the equitable defense of unclean hands so as to preclude the recognition of the foreign proceeding. Finally, this Court fails to find anything presented to it which rises to the level that would cause it to take action that is "manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506 (2007).  Thus, under the mandatory language of 11 U.S.C. § 1517, this Court recognizes the English proceeding as a foreign main proceeding, that O'Sullivan is a person and appointed as

20

foreign representative, and the petition meets the requirements for recognition under § 1515. 11 U.S.C. § 1517 (2007).[5]

E.  Prefiling Injunction of Motion to Quash Lis Pendens and Slander of Title

in Virginia State Court

The Trustee, in both his argument at the Final Hearing for the Petition for Recognition of Foreign Main Proceeding and in his Proposed Final Order Granting Recognition of Foreign Main Proceeding later filed with the Court, requested that the Debtor be "enjoined from bringing any litigation against the Trustee or the Trustee's professionals in any way relating to his assets without further order from this Court."  Jonathan A. Loy, Case No. 07-51040-SCS, Docket Entry No. 20, Letter Re: Proposed Order filed October 27, 2007, at ¶ 12. Alternatively, counsel for the Trustee requested at the Final Hearing that this Court require Loy to file the Motion to Quash Lis Pendens or a slander of title action in this Court.  The Trustee relies upon 11 U.S.C. § 1521(a), which the Trustee asserts permits the Court enjoin a wide variety of the debtor's acts.

As Loy has yet to file a Motion to Quash Lis Pendens or a slander of title suit in any court, this Court considers the Trustee's request for prefiling injunctive relief under the standard set forth by the Fourth Circuit Court of Appeals in *Cromer v. Kraft Foods North America, Inc.*, 390 F.3d 812 (4th Cir. 2004).  Federal courts may issue prefiling injunctions under the authority granted by the All Writs Act, 28 § U.S.C. 1651(a) (2007).  A prefiling injunction is a "drastic remedy [that] must

_____

[5]  At this juncture the Court only properly has before it the Trustee's Petition for Recognition of the English proceeding. The Debtor's defenses may still be asserted in any further proceedings, either in this Court or in possible state court litigation regarding the filing of the lis pendens, the trustee's conduct, and the true ownership of the Hampton Property, and the Court reaches no conclusion as to the efficacy of any such defenses at this juncture of the proceedings.

be used sparingly . . . consistent with constitutional guarantees of due process of law and access to

the courts. *Cromer*, 390 F.3d at 817 (citing U.S. Const. amend XIV, § 1).  In the cases in which

injunctive relief is sought against a pro se party, the barriers to granting prefiling injunctive relief

are further heightened.  *Id.* at 818. (citing *Pavilonis v. King*, 626 F.2d 1075, 1079 (1st Cir. 1980))

("Use of such measures against a pro se plaintiff should be approached with particular caution and

should remain very much the exception to the general rule of free access to the courts.") (internal

quotations omitted).  The circumstances that the Fourth Circuit instructs a court to weigh when

granting prefiling injunctive relief are: "(1) the party's history of litigation, in particular whether he

has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis

for pursuing litigation, or simply intended to harass; (3) the extent of the burden on the courts and

other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions. *Id.*

(citations omitted).

        In this instance, none of the factors above weigh towards enjoining Loy from filing any suits

related to this matter in any court.  Loy has yet to file a suit in either this Court or any other court

related to this matter.  As noted above, Loy strenuously argues that Virginia law prohibits the

Trustee from filing a lis pendens against the Hampton Property based on the English Order. While

the Court passes no judgment on the merits of any potential suit, it notes that Virginia lis pendens

law is complex and that the answer to Loy's allegation is not clear.[6]  Finally, the burden placed on

_____

        [6] As noted above, counsel for the Trustee requested as an alternative to prefiling
injunctive relief that the Court impose a requirement that any suit filed by Loy be filed in this
Court. If Loy were to file a slander of title suit, however, it is questionable whether this Court
has the jurisdiction to hear such a state tort law action, and the Court must also decline to issue
an injunction imposing a requirement on Loy that any litigation relating to the lis pendens be
channeled to this Court exclusively.  In addition, the specific language of 11 U.S.C. § 1509(b)(1)
which permits a recognized foreign representative to "sue and be sued in a court in the United

the courts by allowing Loy to file is not out of the ordinary, and the facts in this case do not indicate

a need for sanctions of any sort.  Moreover, the Trustee has not presented the evidentiary foundation

necessary to allow the Court to take an action as extraordinary as issuing a prefiling injunction

against Loy.   Indeed the Court notes that the factual scenario in this case is far from the

circumstances generally present in which a court would issue a prefiling injuction.  *See e.g. Morning*

*Star Baptist Church v. James City County Police*, 480 F. Supp. 2d 853 (E.D. Va. 2007) (issuing a

prefiling injunction against a plaintiff who filed six duplicative lawsuits against the same defendants

over a twenty year period).

Finally, even if the prayer of the Trustee to permanently enjoin any assertion of claims by

Loy is not construed as a prefiling injunction, application of the traditional measure of entitlement

to injunctive relief also weighs heavily against granting such relief here.  When a court considers

whether injunctive relief is appropriate, it should consider: "(1) the likelihood of irreparable harm

to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendant if

the injunction is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the

public interest."   *Safety-Kleen, Inc. v. Wyche*, 274 F.3d 846, 858–59 (4th Cir. 2001) (citing

*Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 195 (4th Cir. 1977)).  If the injunction

is denied, the Trustee will, if Loy files a Motion to Quash Lis Pendens or a slander of title suit in any

court, be tasked with defending his actions in such litigation.  The Trustee cites the cost of such

litigation as an example of the potential harm to the Trustee, but fails to be more specific as to the

potential pecuniary impact.  Such litigation would, at the very least, prevent the Trustee from

---

States," 11 U.S.C. § 1509(b)(1), also suggests a Congressional intent that after recognition, suits
against representatives are appropriate in state court.

exercising his rights as to the Hampton Property during that litigation and possibly forestall any payment to Loy's creditors in the meantime.  However, the Trustee has put forth no evidence to show that any loss to the estate would occur during that time.  The likelihood of harm to Loy, conversely, if the injunction is granted, is far greater than the irreparable harm to the Trustee if the injunction is denied.  If Loy is prevented from filing suit against the Trustee, Loy loses the opportunity to protect his rights and interest in the Hampton Property and to challenge the validity of the Trustee's actions with regard to the filing of the lis pendens.  Further, the breadth of the injunction prayed for ("enjoined from bringing any litigation against the Trustee or the Trustee's professionals in any way relating to his assets without further order from this Court") is such that Loy could be deprived of seeking redress against the Trustee or his professionals in the event of any wrongdoing or misdeeds by the Trustee or his professionals.  Finally, to impose upon Loy, a pro se party who is not a citizen of this country, the requirement that he obtain court approval prior to filing litigation against the Trustee or his professionals is too drastic a step under the circumstances in the instant matter.

By asking for such an extraordinary remedy, the Trustee has implicitly argued that the basis for any litigation Loy might file is meritless.  As explained above, however, the answers to the issues Loy has raised are not clear.  Public interest in this instance weighs in favor of allowing Loy to file a suit and to have that suit decided after a trial on the merits.  Preventing such filing, particularly with such scant evidentiary foundation, strikes against the general principles of due process.  Therefore, for the reasons stated, this Court declines to issue a prefiling injunction against Loy and, to the extent required by 11 U.S.C. § 1509,  permits him to file suit in state court if he so chooses.  The Court also declines to mandate that any such action Loy may file be filed in this Court, for the

reasons previously stated above.

A separate Order will be entered, consistent with this Memorandum Opinion, recognizing

the petition and denying the Trustee's request for a prefiling injunction against Loy.

The Clerk is ORDERED to forward a copy of this Memorandum Opinion to Douglas Foley,

counsel for Jeremiah A. O'Sullivan; and to Jonathan A. Loy, Pro Se Debtor.

**Entered this 18th day of December, 2007.**

STEPHEN C. ST. JOHN
United States Bankruptcy Judge