# UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

|  |  |  |
|---|---|---|
| *In re*: | ) | Case No. 07-51040-FJS |
|  | ) |  |
|  | ) | Chapter 15 |
| Jonathan A. Loy, | ) |  |
|  | ) | Case No. 09-51379-FJS |
|  | ) |  |
| *Debtor*. | ) | Chapter 7 |
|  | ) |  |

## MEMORANDUM OPINION

This matter is before the Court upon the Debtor's "Motion To Revoke Recognition Of Foreign Main Proceeding Pursuant To 11 U.S.C. § 1517(d)" (the "Motion to Revoke Recognition") filed by Jonathan A. Loy (the "Debtor") on September 15, 2009. (Doc. No. 71.)[1] The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference from the United States District Court for the Eastern District of Virginia, dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (P), in which final orders of judgments may be entered by a bankruptcy judge. Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408(1) and 1409(a).

In seeking to revoke recognition, the Debtor is seeking an extraordinary equitable remedy. As will be explained, the Court finds that it is within its discretion to revisit the prior grant of Chapter 15 recognition. At this time and on the state of the record, the Court declines to exercise its discretion to award the Debtor any relief. As discussed below, the Court will afford the Debtor the opportunity to supplement or complete the record. If that is done, then the Court

---

[1] Unless otherwise noted by the Court, all cites that are Docket Entry Numbers pertain to the Debtor's Chapter 15 Case, Case Number 07-51040.

will revisit its decision, pursuant to 11 U.S.C. § 1517(d) of the Bankruptcy Code (the "Code").

Finally, the Court will direct the Chapter 7 Trustee to resume administration of the Chapter 7

case and its assets. In making this determination, the Court has considered the pleadings, the

entire trial record, and the arguments of the parties. Each of this has been of assistance in

reaching the Court's findings of facts and conclusions of law detailed herein.

## I. INTRODUCTION

This case has taken a long, circuitous route through the bankruptcy process.[2] Additional

material facts and new evidence have been introduced since the hearing on the English Trustee's

Petition for Recognition was convened before the Honorable Stephen C. St. John in 2007. A

detailed discussion of the background and procedural history is necessary to explicate the

Court's focus and legal analysis in this Opinion.

## II. BACKGROUND & PROCEDURAL HISTORY

### A. Background

The Debtor is a British citizen who resided lawfully in Hampton, Virginia until mid-to-

late December 2010. The Court finds as a finding of fact that the Debtor resided in Hampton,

Virginia beginning in November 2004.[3] As will be explained below, the Debtor currently resides

in Meslan, France. In May 2000, when the Debtor still resided in England, the Debtor and his

brother formed Cider House Furniture, which designed and sold wood furniture. Unfortunately,

the company failed. (Doc. No.16, at 2.) In 2003, pursuant to the United Kingdom's Insolvency

---

[2] This Chapter 15 case was transferred from the Honorable Stephen C. St. John to the undersigned on June 12, 2008. (Doc. No. 64.) The Debtor's Chapter 7 case also was transferred from Judge St. John on August 27, 2009. (Case No. 09-51379, Doc. No. 8.)

[3] The Debtor and Mrs. Loy resided in Hampton, Virginia, as early as November 2004. (Case No. 09-51379-FJS, Doc. No. 27, ¶ 16.) The Debtor and Mrs. Loy, however, have also made statements that suggest they moved to the United States on or about November 2005. (Case No. 08-5002, Doc. No. 9, ¶ 9 (stating that the Debtor and Mrs. Loy resided in the United States fifteen (15) months prior to attempting to obtain a loan in February 2007)).

2

Act of 1986, the Debtor made a Proposal for Individual Voluntary Arrangement (the "IVA")

with creditors in the Exeter Country Court, England.  Under the IVA, the Debtor proposed to sell

certain property in France to satisfy his debts.  (Doc. No. 3, Ex. A.)  The Debtor proposed to

retain real property that he purchased on August 9, 2002 in Hampton, Virginia, located at 200

Creekview Lane (the "Creekview Property").  (Doc. No. 3, Ex. A.)  The IVA was approved on

July 31, 2003.  (Doc. No. 3, Ex. E, ¶ 4.)  Christopher MacKenzie-Thorpe was appointed initially

Supervisor of the IVA; Jeremiah O'Sullivan ("O'Sullivan" or the "English Trustee") later

replaced him.

On March 31, 2005, the Debtor informed O'Sullivan that he had incurred more debt,

could not meet the terms of the IVA, and was, thus, in default.  (Doc. No. 3, Ex. B.)  In March

2006, O'Sullivan filed a Default Petition with the Exeter County Court in Devon, England,

requesting that the Debtor be adjudged a "bankrupt."  (Doc. No. 3, Ex. E.)  On August 17, 2006,

Deputy District Judge Ayles of the Exeter Country Court issued an order adjudging the Debtor a

"bankrupt" and appointing O'Sullivan as trustee to oversee the English Bankruptcy proceedings

(the "English Bankruptcy Court Order").  (Doc. No. 3, Ex. F.)  Following entry of the English

Bankruptcy Court Order, the English Trustee, the Debtor, and the Debtor's non-bankrupt spouse,

Susan J. Loy ("Mrs. Loy"), engaged in negotiations with regard to the disposition of the

Creekview Property.  The negotiations were unsuccessful.

From July 19, 2002 to October 24, 2007, record title to the Creekview property was in the

Debtor's sole name, as reflected in the real estate records maintained by the Clerk of the Circuit

Court for the City of Hampton, Virginia.  (Doc. No. 3, Ex. G, at 5.)  On February 1, 2007, after

discovering that the Debtor was the sole record-owner of the Creekview property, the English

Trustee filed in the Circuit Court for the City of Hampton, Virginia a Memorandum of Lis

3

Pendens asserting his rights in the property (the "Lis Pendens"). (Doc. No. 3, Ex. G.) Leo Perk, Esq., ("Perk") represented the Debtor with regard to the Lis Pendens and responded by filing a Motion to Quash the Memorandum of Lis Pendens. (Doc No. 3, Ex. I.)

Although the Debtor was the subject of the pending bankruptcy proceeding in England and was aware of the Lis Pendens clouding title to the Creekview Property, the Debtor executed a Deed of Gift of the Creekview Property to himself and Mrs. Loy as tenants-by-the-entirety with the right of survivorship as at common law (the "Deed of Gift"). The Deed of Gift was recorded on October 24, 2007. (Doc. No. 29, Ex. D.)

Subsequently, on October 29, 2007, the Debtor and Mrs. Loy executed and recorded a Deed of Trust that encumbered the Creekview Property for the benefit of Joseph L. R. Pinard (the "Pinard Deed of Trust"). (Doc. No. 29, Ex. E.) Perk serves as trustee on the Pinard Deed of Trust. Prior to recordation of the Pinard Deed of Trust, Pinard was aware of the Lis Pendens and viewed a copy of the Lis Pendens, as well as the English Bankruptcy Court Order. (Doc. No. 40, Feb. 11, 2008 Hr'g Tr. at 16:11-24, 17:10-18.) There is no evidence in the record that the English Trustee and the English Court authorized the Deed of Gift or the Pinard Deed of Trust.

On October 28, 2007, the English Trustee filed a Petition for Recognition of Foreign Main Proceeding (the "Petition for Recognition"), pursuant to 11 U.S.C. §§ 1515 and 1517(a)(1), in the United States Bankruptcy Court for the Eastern District of Virginia, Newport News Division. (Doc. No. 1.) On that day, the English Trustee also filed a Motion to Approve Recognition of Foreign Main Proceeding (the "Motion to Approve"). (Doc. No. 3.)

### B. The Recognition Proceeding

The Debtor's primary focus at the outset of the Petition for Recognition proceedings was the validity of the Lis Pendens. The Debtor appeared *pro se* at the November 1, 2007

4

preliminary hearing on the Motion to Approve, and the Debtor introduced an Exhibit: "Response to Motion by McGuire Woods on Behalf of English Trustee O'Sullivan against the property of Mr. and Mrs. Loy" (the "Response to the Motion to Approve"). (Doc. Nos. 10, 12.) The Debtor relied on the Response to the Motion to Approve for support that the Lis Pendens prevented him from securing a loan needed to develop the Creekview Property.

Subsequently, on November 20, 2007, the Debtor filed a response to the Motion to Approve, styled as a "Statement of Jonathan Loy in Support of Denial of Relief to English Trustee on Doctrine of Unclean Hands" (the "Unlcean Hands Brief"). (Doc. No. 16.) The Debtor alleged that his contribution towards the Creekview Property was only $22,000.00 and that Mrs. Loy's contribution towards the purchase price was $170,000.00. (Doc No. 16, at 2, 4.) The Debtor contended that the Creekview Property was not subject to his English bankruptcy estate.[4] (Doc. No. 16, at 4.) The Debtor contended that (1) the English Trustee's omission of the English Bankruptcy Proceeding rendered the Lis Pendens unenforceable; and (2) the Petition for Recognition ought to have been filed before the Lis Pendens. (Doc. No. 16, at 5-6.) The Debtor requested that he receive permission to file suit in Virginia state court in order to remove the Lis Pendens and to obtain damages for slander to the Creekview Property's title. (Doc No. 16, at 8.)

The Court held a final hearing on the Petition for Recognition and the Motion to Approve on November 26, 2007. (Doc. No. 28.) At that hearing, the Debtor admitted under oath that the English Bankruptcy Court Order adjudged him a bankrupt and appointed O'Sullivan as the English Trustee. (Nov. 26, 2007 Hr'g Tr. 10:2-8.) The English Trustee asserted that under 11

---

[4] "Even after the unlawful *lis pendens* [the Debtor] offered $22,000 to the Trustee in settlement representing his share at the time of the Creekview Property . . . . This was declined by the Trustee who instead chose to pursue assets, that a corsury [*sic*] examination of the facts relating to the source of those assets, would patently show, they were Mrs. Loy's." (Doc. No. 16, at 4.)

5

U.S.C. § 1509(f), Chapter 15 allows claims to be filed in the courts of the United States prior to

recognition of a foreign proceeding. (Nov. 26, 2007 Hr'g Tr. 41:7-20.) In addition the English

Trustee argued that § 306 of the Insolvency Act of England provides that all of a bankrupt's

estate vests immediately in the trustee upon appointment of that trustee and that the Lis Pendens

merely provided notice of that fact. (Nov. 26, 2007 Hr'g Tr. 43:6-15.) The English Trustee

requested that the Debtor be enjoined under § 1521(a) of the Code[5] from pursuing litigation in

state court or, alternatively, that the Debtor be required to file his actions in this Court. (Nov. 26,

2007 Hr'g Tr. 45:11-46:3.) The Debtor repeated his aforementioned arguments. (Nov. 26, 2007

Hr'g Tr. 54:2-63:25.)

### C. Judge St. John's Opinion And Order

In a Memorandum Opinion and an Order entered on December 18, 2007, Judge St. John

granted recognition of the foreign main proceeding (the "Recognition Order"). (Doc. Nos. 22,

23.) Judge St. John articulated in detail the framework for Chapter 15 of the Code. *In re Loy*,

380 B.R. 154 (Bankr. E.D. Va. 2007). Chapter 15 allows a foreign representative of a foreign

bankruptcy proceeding to apply for recognition of that proceeding in the United States. *Loy*, 380

B.R. at 161. Once the foreign proceeding qualifies for recognition, the foreign representative is

permitted to sue or be sued in the United States courts. *Id.* Additionally, the foreign

representative gains the authority to elicit the aid of those courts. *See Ilida v. Kitahara (In re*

*Ilida)*, 377 B.R. 243, 257 (B.A.P. 9th Cir. 2007); *see also* 11 U.S.C. § 1509(b) (2006).

To qualify for Chapter 15 recognition, the individual seeking recognition must be a

---

[5] Section 1521(a)(1) of the Code states: "Upon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief, including . . . staying the commencement or continuation of an individual action or proceeding concerning the debtor's assets,

"foreign representative," as defined by § 101(24) of the Code. 11 U.S.C. §§ 1509(a) & 1515(a)

(2006). The Court ruled that the English Trustee satisfied the requirements of § 101(24)[6] and

thus qualified as a "foreign represenative." *Loy*, 380 B.R. at 162. Next, "§ 1509 imposes a

requirement on the foreign representative that he must first obtain foreign proceeding recognition

before enlisting the comity or cooperation of a court of the United States." *Id.* at 164-165. The

English Trustee's failure to obtain Chapter 15 recognition prior to filing the Lis Pendens in

February 2007 was *not* fatal to recognition. *Id.* at 167. That ruling, however, did not address the

propriety of the Lis Pendens under Virginia law. *Id.* at 167 n.4.

The Motion to Approve requested that the foreign proceeding qualify as a "foreign main

proceeding"—as opposed to a "foreign nonmain proceeding—pursuant to §§ 1515 and 1517 of

the Code. *Id.* at 163. A "foreign main proceeding" is defined as "a foreign proceeding pending

in the country where the debtor has the center of its main interest" (or "COMI"). 11 U.S.C. §§

1502(4), 1515(a). Judge St. John acknowledged that the determination of whether the English

bankruptcy should be recognized as a foreign main proceeding turned on the definition and

application of the facts to the term "COMI." *Id.* at 162.

While the Code does not define COMI, the Court noted that § 1516(c) provides that,

absent evidence to the contrary, a debtor's "habitual residence" is presumed to be the debtor's

COMI. *Id.* The Court applied the factors outlined in *In re SPhinX, Ltd.*, 351 B.R. 103, 117

(Bankr. S.D.N.Y. 2006), and *In re Bear Stearns High-Grade Structured Credit Strategies Master*

---

rights, obligations or liabilities to the extent that have not been stayed under section 1520(a)." 11 U.S.C. § 1521(a)(1) (2006).

[6] "The term 'foreign representative' means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such a foreign proceeding." 11 U.S.C. § 101(24) (2006).

*Fund, Ltd. (Bear Stearns)*, 374 B.R. 122, 126 (Bankr. S.D.N.Y. 2007). Those factors include:

(1) the location of the majority of the debtor's creditors or a majority of creditors that would be

affected by the case; (2) the jurisdiction whose law would apply to most disputes; and (3) the

location of a debtor's primary assets. *Loy*, 380 B.R. at 163.[7]

The English Trustee stated only that the "the English Administration is *without question*

[a] foreign main proceeding under section 1517 of the Bankruptcy Code." *Id.* (emphasis added).

The Court needed more than this conclusory statement to resolve the issue, but the parties'

almost singular focus on the Lis Pendens provided the Court with almost no evidence with which

to work. Piecing together the small number of relevant facts available at the time, the Court

found that the Debtor's "habitual residence" was the United Kingdom. *Id.* at 163.

The evidence available to the Court at that time weighed in favor of the determination

that Debtor's COMI was the United Kingdom pursuant to application of the *In re SPhinX* and

*Bear Stearns* factors. First, almost all of the Debtor's then-known creditors were located in the

United Kingdom. Second, the IVA, the English bankruptcy proceeding, and the English

Trustee's authority were all governed by English law. Finally, although the location of the

Creekview Property in Hampton, Virginia favored a United States COMI, this factor did not

outweigh the other *In re SPhinX* and *Bear Stearns* factors and its habitual residence

determination. Thus, the Court found that the Debtor's COMI was the United Kingdom. *Id.*

### D. Subsequent Proceedings

The Recognition Order did not create a lull amongst the parties to this case. The parties

filed numerous suits after the Recognition Order. The Debtor and Mrs. Loy filed suit against the

English Trustee in state court, a suit that was later removed to this Court and designated as an

---

[7] On the state of the record, as it has evolved, the Debtor's "habitual residence" is uncertain.

Adversary Proceeding. The Court later consolidated the removed state court Adversary

Proceeding with a later-filed Adversary Proceeding. Also, in August 2009 the English Trustee

commenced a voluntary Chapter 7 case on behalf of the Debtor. Further, the Debtor sought

appellate review by the United States District Court for the Eastern District of Virginia of certain

rulings, as well as seeking review of the English Bankruptcy Court Order by the High Court of

Justice, Chancery Division, Bristol, United Kingdom.

**1. The Removed State Court Suit**

On or about January 10, 2008 the Debtor and Mrs. Loy filed a Bill of Complaint against

the English Trustee in the Circuit Court for the City of Hampton, Virginia, styled *Jonathan and*

*Susan Loy v. Jeremiah Anthony O'Sullivan* (the "Lis Pendens Litigation"). On February 8, 2008,

the English Trustee filed a Notice of Removal pursuant to 28 U.S.C. § 1452. (APN 08-5002-

FJS, Doc. No. 1.) The Lis Pendens Litigation sought "to quash and remove" the Lis Pendens

filed by the English Trustee and "award sanctions and damages for the resultant slander to their

title." (APN 08-5002-FJS, Doc. No. 1, Ex. 1.) In the Lis Pendens Litigation, the Debtor and

Mrs. Loy requested that the Court enter an order remanding the Lis Pendens to the Circuit Court

for the City of Hampton for a determination as to whether the English Trustee's act of placing

the Lis Pendens on the Creekview Property comported with Virginia law. (APN 08-5002-FJS,

Doc. No. 9.)

**2. The Adversary Proceeding Filed By The English Trustee**

On June 5, 2008, the English Trustee filed an Adversary Proceeding, related to the

Debtor's Chapter 15 case, against the Debtor, Mrs. Loy, Pinard, Perk, Townebank, William G.

Kellam, and N. Douglas Burgoyne. (APN 08-5011-FJS, Doc. No. 1.) The English Trustee

sought the avoidance of the October 24, 2007 Deed of Gift to Mrs. Loy and the Pinard Deed of

9

Trust pursuant to 11 U.S.C. § 549(a).[8] (APN 08-5011, Doc. No. 1, ¶¶ 5-22.)  The English

Trustee argued that the phrase "commencement of the case," as used in § 549, means that the

commencement of the Foreign Main Proceeding—the Debtor's English bankruptcy case—was

August 17, 2006, as was held on December 18, 2007.  (APN 08-5011-FJS, Doc. No. 44, ¶ 30.)

### 3. Consolidation Of The Adversary Proceedings

On September 3, 2008 the Court consolidated the Lis Pendens Litigation with the

Adversary Proceeding filed by the English Trustee in June 2008.  (APN 08-5011-FJS, Doc. No.

24.)  The consolidated matters were tried together on January 7 and 8, 2009.  (APN 08-5011-

FJS, Doc. Nos. 96, 97.)  The Court issued an Opinion and Order on August 3, 2009, holding that

the English Trustee's argument that the commencement of the case relates back to the

commencement of the Foreign Main Proceeding on August 17, 2006 was "untenable." *In re Loy*,

APN 08-5011-FJS, 2009 WL 2381339, at *4 (Bankr. E.D. Va. Aug. 3, 2009).  The Court drew

support for this conclusion from (1) the lack of supporting case law for the English Trustee's

argument; and (2) that nowhere in Chapter 15 is there a reference to the foreign main proceeding

as the "case." *Loy*, 2009 WL 2381339, at *3.  Rather, the key phrase in Chapter 15 is "upon

recognition" with regard to how a foreign bankruptcy comes into effect in the United States

bankruptcy system. *Loy*, 2009 WL 2381339, at *4.  The Court held that the use of that preface in

Chapter 15 set forth a prospective recognition that occurred on the date that an American

bankruptcy court recognized a foreign main proceeding. *Id.*  The Court denied the English

Trustee's request for relief pursuant to § 549 as to the Deed of Gift and the Pinard Deed of Trust.

---

[8] Section 549(a) of the Code states that "[e]xcept as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—(1) that occurs after the commencement of the case; and (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or (B) that is not authorized under this title or by the court." 11 U.S.C. § 549(a) (2006).

*Id.* at *6.[9]

The Honorable Mark S. Davis of the United States District Court of the Eastern District

of Virginia affirmed this ruling on June 23, 2010. *O'Sullivan v. Loy (In re Loy)*, 432 B.R. 551

(E.D. Va. 2010). Judge Davis stated that §§ 1520(a)(2) and 549(a) require the avoidance of

transfers occurring after the "commencement of the case." *Id.* at 563. There is no definition of

when "commencement of the case" occurs, so Judge Davis looked at three possible

interpretations: "1) the date of the 'commencement' of the foreign main proceeding, which the

English Trustee argued is the date of adjudication, 2) the date of recognition in the United States

Bankruptcy Court, which in this case was made effective as of the date of filing the Chapter 15

proceeding, or 3) the actual date of filing for recognition, which may or may not be the effective

date of recognition." *Id.* Judge Davis held that—for purposes of application to Chapter 15—the

"commencement of the case" pursuant to § 549 is the date of filing a petition for recognition of

the foreign insolvency proceeding in a United States Bankruptcy Court. *Id.*

## 4. The Chapter 7 Case

On August 26, 2009, the English Trustee commenced a voluntary Chapter 7 case on

behalf of the Debtor, pursuant to 11 U.S.C. § 301. (Case No. 09-51379-FJS.) Under §

1511(a)(2) of the Code, a foreign representative in a recognized foreign main proceeding may

commence a voluntary Chapter 7 case.[10] Subsequently, David. R. Ruby, Esq., was appointed as

the Chapter 7 Trustee for the case (the "Chapter 7 Trustee").

---

[9] The August 3, 2009 Opinion also examined whether the Court had court jurisdiction to hear the Loys' slander of
title claim against the English Trustee. *Loy*, 2009 WL 2381339, at *5-*6. The Court held that the Loys' slander of
title claim possessed none of the characteristics required to create any type of bankruptcy court jurisdiction—
"arising in," "arising under," and "related to" jurisdiction. The Court dismissed the adversary proceeding and
remanded it to state court for adjudication. *Loy*, 2009 WL 2381339, at *6-*7.

[10] "Upon recognition, a foreign representative may commence . . . (2) a voluntary case under section 301 or 302, if
the foreign proceeding is a foreign main proceeding." 11 U.S.C. § 1511(a)(2) (2006).

On September 4, 2009, the Debtor filed a "Motion to Dismiss and for Punitive Damages

& Sanctions" (the "First Motion to Dismiss"). (Case No. 09-51379-FJS, Doc. No. 19.) In it, the

Debtor claimed that the "voluntary" Chapter 7 petition was actually "involuntary," and thus,

invalid. (Case No. 09-51379-FJS, Doc. No. 19, ¶¶ 15-18.) Unlike the Debtor's later motions to

dismiss, the First Motion to Dismiss contained little case law and legal support for his

contentions.

On September 15, 2009, the Debtor filed the Motion to Revoke Recognition. (Doc. No.

71; Case No. 09-51379-FJS, Doc. No. 27.) The Motion to Revoke Recognition will be discussed

at length below because it bears on the issue presently before the Court. In the Motion to

Revoke Recognition, the Debtor also made the following prayers for relief: (1) that the Court

dismiss the Chapter 7 case filed by the English Trustee; (2) that the Court expunge from the

records any reference to the Chapter 15 case, the Chapter 7 case, as well as compel the English

Trustee to contact applicable credit reporting agencies and remove such references from those

agencies' records; (3) that the Court dismiss the Chapter 15 case; and (4) that the Court assess

sanctions and costs against the English Trustee. (Doc. No. 71, at 9.)

On October 9, 2009, the Debtor filed a "Motion to Dismiss 'Voluntary' Chapter 7

Bankruptcy Under 11 U.S.C. § 301 & § 303 and For Punitive Damages & Sanctions" (the

"Second Motion to Dismiss"). (Case No. 09-51379-FJS, Doc. No. 58.) The Debtor repeated his

argument that the Chapter 7 proceeding was involuntary, but this time grounded his argument in

the Code by comparing voluntary bankruptcy pursuant to § 301 with involuntary bankruptcy

pursuant to § 303. By Order entered on February 17, 2010, the Court Denied the Second Motion

to Dismiss. (Case No. 09-51379-FJS, Doc. No. 152.)

On October 29, 2009, the Debtor filed a "Motion to Acknowledge Automatic Dismissal

12

[*sic*]'Voluntary' Chapter 7 Pursuant to 11 U.S.C. §521 §1513, §1506, §707 and Rule 9011" (the

"Motion for Automatic Dismissal"), again focusing on the interdependence of his Chapter 15 and

Chapter 7 cases. (Case No. 09-51379-FJS, Doc. No. 75.) In the Motion for Automatic

Dismissal, the Debtor presented case law to support his argument that the Court must withdraw

or dismiss the Chapter 7 petition because the Debtor failed to comply with the requirements

outlined in various sections of the Code, such as §§ 521 and 109(h). (Case No. 09-51379-FJS,

Doc. No. 75, ¶¶ 13-15.) The Debtor also claimed that the petition should be withdrawn or

dismissed because it was contrary to public policy pursuant to § 1506.[11] (Case No. 09-51379-

FJS, Doc. No. 75, at 4.)

 At a hearing on November 20, 2009, the Court found that the Motion to Revoke

Recognition initiated a contested matter. (Case No. 09-51379-FJS, Doc. No. 98.) The Court

informed the parties that they were entitled to discovery. The Court explained that it needed to

hear evidence, not a repeat of argument. The parties agreed to proceed on that date without

further discovery. After a number of exhibits were presented and admitted and various

stipulations advanced by the parties, the Court found that in order to make an informed decision,

it needed to review the full record presented to Judge St. John in November 2007. The Court

also allowed the parties to submit additional evidence, briefing, and arguments as needed.

Finally, the Court granted the Debtor's request to hold the Chapter 7 case in abeyance on the

condition that the parties extend certain deadlines for filing complaints objecting to discharge, as

well as exemption challenges. On November 25, 2009, the Court Ordered all Chapter 7

proceedings stayed, including the previously scheduled § 341 meeting, until an Order was

---

[11] "Nothing in this chapter prevents the court from refusing to take an action governed by this chapter if the action would be manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506 (2006).

entered that adjudicated the Debtor's Motion for Automatic Dismissal. (Case No. 09-51379-FJS, Doc. No. 100.)[12]

On January 25, 2010, the English Trustee filed a Response to the Debtor's Motion for Automatic Dismissal (the "*Response to Motion for Automatic Dismissal*"). (Case No. 09-51379-FJS, Doc. No. 137.) The English Trustee claimed that he initiated the Chapter 7 proceedings to fulfill his fiduciary duty as Trustee in the English bankruptcy case and as foreign representative in the accompanying Chapter 15 case. (Case No. 09-51379-FJS, Doc. No. 137, ¶6.) The English Trustee also claimed that Chapter 7 preserved his ability to avoid the Deed of Gift of the Creekview Property under § 548 of the Code, something that could not have been accomplished under Chapter 15. (Case No. 09-51379-FJS, Doc. No. 137, ¶6.)

At a hearing on February 10, 2010, the Court ruled that the Debtor's Second Motion to Dismiss lacked legal merit of any kind and, consequently, denied the Debtor's requested relief. (Case No. 09-51379-FJS, Doc. Nos. 144, 152.) The Court informed the Debtor that he had fourteen days after the Order was entered to appeal its decision. The same day, the Court denied, in part, the Debtor's Motion for Automatic Dismissal but also found that it needed to determine whether there was a realistic economic benefit to be gained by continuing with the bankruptcy cases. (Case No. 09-51379-FJS, Doc. No. 145.) The Court directed the Debtor to meet with the Chapter 7 Trustee to determine: (1) which creditors were owed money on the date that the Chapter 7 petition was filed; (2) the nature—individual or joint—of the claims; and (3) the value of the Creekview Property. (Case No. 09-51379-FJS, Doc. No. 145.)

---

[12] On the same day, the Debtor filed a post-hearing brief on his Motion to Revoke Recognition of Foreign Main Proceeding Pursuant to 11 U.S.C. § 1517(d) (the "Post Hearing Motion to Revoke Recognition"), in which the Debtor further addressed his realization that his case turned almost entirely on the location of his COMI. (Case No. 09-51379-FJS, Doc. No. 105.)

14

The Chapter 7 Trustee filed his report on February 18, 2010. (Case No. 09-51379-FJS, Doc. No. 158.) The Chapter 7 Trustee's report contained information on: (i) the value of the Creekview Property; (ii) claims again the Creekview Property; (iii) individual claims against the Debtor and joint claims against the Debtor and Mrs. Loy; and (iv) pending litigation. The Chapter 7 Trustee presented four valuations of the Creekview Property, ranging from $492,300.00 to $535,000.00. (Case No. 09-51379-FJS, Doc. No. 158, at 3.) The Chapter 7 Trustee reported on three claims against the Creekview Property, excluding the Lis Pendens Litigation: (a) delinquent taxes owed to the City of Hampton in the amount of $12,070.94; (b) the Deed of Trust held by the Pinard Family Living Trust in the amount of $119,357.47; and (c) the Deed of Trust on which Perk is Trustee in the amount of $39,814.79. (Case No. 09-51379-FJS, Doc. No. 158, at 4-5.) The Chapter 7 Trustee stated that individual claims against the Debtor, including the English Trustee's claim, totaled $995,602.80 and joint claims against the Debtor and Mrs. Loy totaled $27,267.91.[13] (Case No. 09-51379-FJS, Doc. No. 158, at 5-6.) Third, the Chapter 7 Trustee reported that two matters were pending in the Circuit Court for the City of Hampton, Virginia: (a) the Slander of Title action filed by the Debtor and Mrs. Loy against the English Trustee; and (b) a Complaint filed by the Debtor and Mrs. Loy against Breen Title & Settlement, David Breen, and Gateway Title Agency. (Case No. 09-51379-FJS, Doc. No. 158, at 8.) The Chapter 7 Trustee concluded that—despite improperly being claimed as exempt on the Debtor's Bankruptcy Schedules pursuant to Virginia Code § 34-28.1—each lawsuit had merit and "constitute[d] valuable assets of the bankruptcy estate." (Case No. 09-

---

[13] In his report, the Chapter 7 Trustee did not segregate the claims against the Debtor individually or against the Debtor and Mrs. Loy based on whether those claims originated from debts in the United States or in the United Kingdom. Notably, the English Trustee's claim against the Debtor is valued at $639,206.00. (Case No. 09-51379, Doc. 158, at 6.) This factor favors a determination that the Debtor's COMI was, and remains, the United Kingdom.

15

51379-FJS, Doc. No. 158, at 8.)

**5. The Debtor's Appeal Of His U.K. Bankruptcy Order**

Concurrent with the proceedings before this Court, the Debtor sought an appeal of the

English Bankruptcy Court Order.  The Debtor filed an application to annul English Bankruptcy

Court Order on September 29, 2009 (the "Debtor's Application").  Further, the English Trustee

filed an application (the "English Trustee's Application") requesting that all property held by the

Debtor on August 17, 2006, including the Creekview Property, be vested in the English Trustee

and that, therein, only the English Trustee may dispose of that property.  (Case No. 09-51379,

Doc. No. 210, Ex. A.)  On August 24 and 25, 2010, Judge McCahill, QC, of the High Court of

Justice, Chancery Division, Bristol, England conducted a trial on the Debtor's Application and

the English Trustee's Application.  (Case No. 09-51379, Doc. No. 210, Ex. A.)

On August 25, 2010, Judge McCahill issued a Minute of Order that dismissed the

Debtor's Application.  (Case No. 09-51379, Doc. No. 210, Ex. C.)  Further, that Order required

the Debtor to pay the legal costs of the English Trustee.  That Order amended the August 17,

2006 Order of Judge Ayles.  Judge McCahill amended the address of the Debtor as it appeared in

the English Bankruptcy Court Order.  The English Bankruptcy Court Order stated that the

Debtor's address was "5 Quarterhouse Turn, Hampton, VA 23660, USA and place of residence

in England Crosses Farm, Thorventon, Exeter, Devon.  EX5 5JL."  Judge McCahill, in paragraph

4 of his Minute of Order, amended those addresses as follows, by replacing those words with the

words: "13 Old Fox Hill Road, Hampton, Virginia 23669, USA, latterly of 5 Quarterhouse Turn,

Hampton VA 23669, USA and has had a place of residence in England Crosses Farm

Thorventon, Exeter, Devon.  EX5 5JL."  (Case No. 09-51379, Doc. No. 210, Ex. C.)

Judge McCahill, however, wrote that "nothing in paragraph 4 of this order affects the

validity of the order made by DDJ Ayles on 17 August 2006." (Case No. 09-51379, Doc. No. 210, Ex. C, at 2.) Lastly, Judge McCahill refused the Debtor's request for permission to appeal the Order to the Court of Appeal. (Case No. 09-51379, Doc. No. 210, Ex. C, at 3.)

On August 25, 2010, Judge McCahill issued a Minute of Order on the English Trustee's Application. (Case No. 09-51379, Doc. No. 210, Ex. D.) That Order (1) held that all the property owned by the Debtor, including the Creekview Property, vested with the English Trustee on the date of his appointment; (2) only the English Trustee may affect a disposition of the Debtor's property; and (3) that Mrs. Loy was not precluded from arguing that she held an interest in the Creekview Property as of August 17, 2006. (Case No. 09-51379, Doc. No. 210, Ex. C, at 2.)

Judge McCahill's affirmation of Judge Ayles's ruling is significant. While not questioning or reviewing the propriety of Judge McCahill's decision in any way, the result of that ruling brings finality to the grant of power vested in the English Trustee. By vesting in the English Trustee the power to dispose of property once held by the Debtor, the English Bankruptcy Court Order clearly delineates the starting point for Chapter 15 recognition in this case.   By vesting that power in O'Sullivan, Judge Ayles enabled O'Sullivan to act with the status of a "foreign representative" in the eyes of a United States court pursuant to § 101(24). "A foreign representative may commence a case under section 1504 by filing directly with the court a petition for recognition of a foreign proceeding under section 1515." 11 U.S.C. § 1509. Only a "foreign representative" may commence a case, and without that vesting of power, O'Sullivan may not have been so authorized.

**6. United States District Court Proceedings**

On February 19, 2010, the Debtor and Mrs. Loy filed a Fifth Amendment Complaint for

Declaratory Judgment and Injunctive Relief (the "Fifth Amendment Complaint") in the United

States District Court for the Eastern District of Virginia, Newport News Division.[14]  In light of

this, the Court deferred all rulings in both the Chapter 7 and the Chapter 15 cases until the

District Court either ruled on the Fifth Amendment Complaint or issued further instructions.  The

Court directed the Bankruptcy Clerk to keep cases in an open status but to refuse any further

filings from the Debtor unless and until one of those conditions was met.  (Case No. 09-51379-

FJS, Doc. No. 162.)

On February 24, 2010, the Debtor appealed the Court's February 17, 2010 Order denying

the Second Motion to Dismiss.[15]  (Case No. 09-51379-FJS, Doc. No. 163.)  Initially, the Clerk of

the Court refused to accept the appeal because the Court had ruled that filings were not to be

accepted due to the pending matters before the District Court.  On March 12, 2010, the Court

clarified that the Debtor had the absolute right to appeal and Ordered that the appeal be filed.

(Case No. 09-51379-FJS, Doc. No. 170.)  Ultimately, in April 2010, the Court determined that

the Fifth Amendment Complaint did not implicate § 1517(d).  Therefore, the Court reactivated

the Motion to Revoke Recognition.

### 7. The Debtor's Motion to Revoke Recognition

In the Motion to Revoke Recognition, the Debtor recognized the significance for the

Chapter 15 case of establishing the United States as his COMI.  Section 1517(d)[16] of the Code

---

[14] The Fifth Amendment Complaint was assigned to the Honorable Raymond A. Jackson, and was assigned Case
No. 4:10-CV-00017-RAJ-TEM.  The Case was dismissed for lack of subject matter jurisdiction pursuant to Federal
Rule of Civil Procedure 12(b)(1) on October 21, 2010.

[15] The appeal pending in the United States District Court for the Eastern District of Virginia is Case No. 4:10-CV-
00054-RAJ-TEM, and is assigned to the Honorable Raymond A. Jackson.

[16] "The provisions of this subchapter do not prevent modification or termination of recognition if it is shown that the
grounds for granting it were fully or partially lacking or have ceased to exist, but in considering such action the court

18

allows courts to revisit a prior grant of recognition. (Doc. No. 71, ¶ 7.) The Debtor argued that revisiting the recognition decision in his Chapter 15 case was appropriate because "facts were misrepresented to the court by the petitioner and important evidence was not presented to the court." (Doc. No. 71, ¶ 6.)

The Debtor stated that, in 2002, he and Mrs. Loy sold their family home of seven years in the United Kingdom in order to begin the process of moving their family to Hampton, Virginia to develop a business specializing in the building of English oak-framed homes. (Doc. No. 71, ¶¶ 10-11.) The Debtor noted that the timing of his move from the United Kingdom occurred *five* years prior to when "the English court ordered Mr. Loy bankrupt." (Doc. No. 71, ¶ 10.) The Court notes, however, that the English Bankruptcy Court Order is dated August 17, 2006—four years after the Debtor's purchase of the Creekview Property.[17]

Next, the Debtor stated that in July 2003—three years prior to the English Bankruptcy Order—he registered English Oak House LLC in the Commonwealth of Virginia. The Debtor and Mrs. Loy held 90% of the stock of English Oak House LLC, while a friend living in the United States held 5% and a friend living abroad held 5%. (Doc. No. 71, ¶ 12.) The Debtor stated that in November 2004, nearly *three* years prior to the English Bankruptcy Order, Mrs. Loy and their three children moved to Hampton, Virginia. (Doc. No. 71, ¶ 16.) Again, the Court notes that the Debtor's calculation of years is in error—if the Debtor's family arrived in the United States in November 2004, then that date was nearly two years prior to the English

---

shall give due weight to possible prejudice to parties that have relied upon the order granting recognition. A case under this chapter may be closed in the manner prescribed under section 350." 11 U.S.C. § 1517(d) (2006).

[17] The Debtor asserts that his purchase of the Creekview Property in August 2002 was five years before the August 17, 2006 English Bankruptcy Court Order. August 2002 to August 2006 represents a period of four years' time.

Bankruptcy Order.[18]

The Debtor also argued that the process by which he obtained his Visa to enter and reside in the United States supported a United States-based COMI. (Doc. No. 71, ¶ 13.) Further, according to the Debtor, English Oak House LLC was granted E2 Investor Status in November 2004. (Doc. No. 71, ¶ 16.) Finally, the Debtor stated that he and Mrs. Loy are permitted via their E2 Visa status to remain in the United States through September 11, 2011. (Doc. No. 71, ¶ 19.) The overarching point of the Debtor's argument relating to his and his family's Visa status was that their Visa status was "infinitely renewable, so long as they continued to operate the business they had established—English Oak House LLC—a Virginia registered company since 2003." (Doc. No. 71, ¶ 21.)

The Debtor's final point of argument was that the English Trustee had misrepresented or omitted intentionally material facts as to the Debtor's residence. (Doc. No. 71, ¶ 14.) "The details of Jonathan Loy's residency as represented to the English court by O'Sullivan were not factually correct in the petition for his English bankruptcy or in the final order." (Doc. No. 71, ¶ 15.) In late 2009 and early 2010, the parties briefed additional issues, and the Court did not consider the Debtor's § 1517(d) argument again until April 2010.

On April 23, 2010, the Court held a Status Hearing, during which the Court reiterated that the matters on appeal to the United States District Court did not implicate § 1517(d). The Court gave the Debtor and the English Trustee fifteen days to file supplemental briefs on the issue of revocation of recognition pursuant to § 1517(d). (Case No. 09-51379-FJS, Doc. No. 191.)

On May 3, 2010, the Debtor filed his supplemental brief (the "Supplemental Motion to

---

[18] The Debtor asserts that his and Mrs. Loy's relocation to Hampton, Virginia on November 23, 2004 was three years before the August 17, 2006 English Bankruptcy Court Order. November 23, 2004 to August 17, 2006 represents a period of one year, eight months, and twenty-five days.

Revoke"). (Case No. 09-51379-FJS, Doc. No. 197.) The Debtor presented additional case law and exhibits to support his contention that the United States is his COMI and asked that the Court order that "his family be let alone and be given the opportunity of making a fresh start." (Case No. 09-51379-FJS, Doc. No. 197, at 6.) On June 18, 2010, the Court conducted a Status Hearing at which it informed the parties that the matter remained under advisement. (Case No. 09-51379-FJS, Doc. No. 207.)

On May 7, 2010, the English Trustee filed a "Response To Supplementary Brief By Jonathan Loy On His Motion To Revoke Recognition Of Foreign Main Proceeding Pursuant To 11 U.S.C. § 1517(d)" (the "English Trustee's Response"). (Doc. No. 123.) The English Trustee's Response stated that the Debtor's Supplemental Motion to Revoke "raise[d] no new facts or law in support of the Debtor's Motion," and should be denied. (Doc. No. 123, ¶ 1.)

On October 18, 2010, the Debtor filed a motion requesting a status hearing. (Case No. 09-51379-FJS, Doc. No. 211.) On November 19, 2010, the Court held a Status Hearing on the Motion to Revoke Recognition. (Case No. 09-51379-FJS, Doc. No. 215.) At that hearing, the Debtor reported on the status of his case in the United Kingdom, as set forth above, and argued in favor of revocation of recognition pursuant to § 1517(d). The Chapter 7 Trustee also appeared, as did counsel on behalf of the English Trustee and the United States Trustee's Office. (Nov. 19, 2010 Hr'g Tr. at 26:9-20.) The Court stated at that hearing that it was inclined to revoke recognition. Ultimately, the Court afforded the parties the opportunity to submit final briefs, and scheduled a final hearing for December 14, 2010 in Norfolk, Virginia, a date and location specifically set to accommodate the Debtor's travel plans. (Nov. 19, 2010 Hr'g Tr. at 29:21-31:17.) On December 1, 2010, each of the parties filed briefs in support of their positions as to the Motion to Revoke Recognition. (Case No. 09-51379-FJS, Doc. Nos. 216, 217.)

21

On December 14, 2010, the Court held a final hearing on the Motion to Revoke

Recognition. (Case No. 09-51379-FJS, Doc. Nos. 219, 220.) The Court announced that it would

enter an Order terminating recognition. (Dec. 14, 2010 Hr'g Tr. at 93:11-12.) That finding was

premised on the Debtor's representations in support of his argument that his COMI at all relevant

times was Hampton, Virginia, not the United Kingdom. (Dec. 14, 2010 Hr'g Tr. at 88:23.)

Pursuant to the Court's prospective termination of recognition, the Court stated it would issue

several Orders: (1) the statute of limitations for all creditors was extended fifteen months; (2) the

Debtor and Mrs. Loy were precluded from filing suit against the English Trustee in which the

Debtor challenged the standing of the English Trustee; (3) the Chapter 7 Trustee was permitted

to file an avoidance action against the Debtor; and (4) the Debtor's Chapter 7 case was

dismissed. (Dec. 14, 2010 Hr'g Tr. at 93:11-94:4.) The Court stated that it would reduce its

rulings to a written Memorandum Opinion and Orders in the weeks following the hearing. The

Court also stated that the forthcoming rulings would comprise a final, appealable judgment.

(Dec. 14, 2010 Hr'g Tr. at 94:25-95:15.)

On January 4, 2011, however, the English Trustee filed a Post Hearing Status Report

regarding the Debtor's COMI (the "Post Hearing Status Report"). (Doc. No. 144.) The Post

Hearing Status Report arose out of an electronic-mail communication sent by the Debtor to

counsel for the English Trustee. (Doc. No. 144, Ex. A.) The e-mail message indicates that as of

January 4, 2011, the Debtor relocated to Meslan, France. This unannounced move caught the

Court unawares, as the Debtor had consistently represented that he intended to stay in Hampton,

Virginia. Subsequent e-mail correspondence between counsel for the English Trustee and the

Debtor elicited from the Debtor the statement that "[f]or the time being we will be living in

France but may return to the US permanently if we are successful in the pending lawsuits and

22

meet the necessary visa criteria. Our future plans remain unsettled." (Doc. No. 144, Ex. B.)
Rather than issue its Memorandum Opinion revoking recognition, the Court convened a Status
Hearing to determine the nature and facts of the Debtor's statements that he had relocated to
France. The Court afforded the Debtor the convenience of appearing by telephone at the Status
Hearing. (Doc. No. 147.)

On February 25, 2011, the Court held a Status Hearing with the limited focus of setting a
future date at which the Debtor would appear in person before the Court. The Court questioned
the accuracy of the Debtor's repeated representations that Hampton, Virginia was and would
remain his family's permanent home. (Feb. 25, 2011 Hr'g Tr. at 4:6-11.) It was—and remains
to this day—the Court's desire that the Debtor appear in person to develop the factual record
before the Court. (Feb. 25, 2011 Hr'g Tr. at 4:12-17.) In short, the Debtor refused to make
himself available and stated that he has no intention of returning to the United States. (Feb. 25,
2011 Hr'g Tr. at 5:5-6:6.)[19] The Court will not afford the Debtor the extraordinary remedy of
revocation of recognition without a complete factual record. In light of the Debtor's relocation
to France, the accuracy of the Debtor's statements that his COMI was and would remain
Hampton, Virginia is in doubt.

### E. The Debtor's Statements In Support Of A United States COMI

Since September 15, 2009 and throughout the pendency of the Debtor's various cases, he

---

[19] Relevant portions of the exchange between the Debtor and the Court are as follows:

| Mr. Loy: | I have no means of – financially of returning to the United States . . . . We have no money to buy food tomorrow, and I have no means of getting back . . . . |
| The Court: | Just so we're clear, you are not going to return to the United States for further hearings? |
| Mr. Loy: | That is correct, Your Honor. |

(Feb. 25, 2011 Hr'g Tr. at 5:5-6:6.)

has made repeated representations to the Court that his COMI is in the United States. In his

Motion to Revoke Recognition, the Debtor rebuffed the Court's earlier determination that his

residency in Hampton, Virginia was "temporary": "[T]his court wrongly characterized Jonathan

Loy's presence in the United States as some kind of 'temporary' status which is likely to change.

This is not so." (Doc. No. 71, ¶ 9.) The foundation of the Debtor's Motion to Revoke

Recognition was that his family home was and would remain in Hampton, Virginia, not the

United Kingdom. (Doc. No. 71, ¶¶ 6, 9, 10-12, 16, 19, 21.)

In November 2009, the Debtor filed a Post Hearing Brief, in which he again reiterated

that his COMI was and remained the United States. (Case No. 09-51379, Doc. No. 105, ¶¶ 1, 8-

10.) The Debtor recited various facts that support a United States-based COMI—a business

registered in the Commonwealth of Virginia, Virginia building contractor licenses, property

ownership—and the Debtor stated that a "dogged determination to succeed in the pursuit of the

Loy family's intention to settle here [in Virginia] against incredible opposition further

demonstrates that the United States is, undoubtedly, Jonathan Loy's COMI." (Case No. 09-

51379, Doc. No. 105, ¶ 15.)

At the conclusion of the November 19, 2010 Status Hearing, the Court initially set a final

hearing for December 17, 2010. (Nov. 18, 2010 Hr'g Tr. at 29:21-22.) The Debtor, however,

requested that the date of the final hearing be moved forward due to a planned trip to *England*;

the Debtor and his family had planned to depart on December 15, 2010. (Nov. 18, 2010 Hr'g Tr.

at 29:25-30:2.)[20] As stated above, the Debtor has relocated to France and appears to have

---

[20] Relevant portions of the exchange between the Debtor and the Court are as follows:

| Mr. Loy: | One of the things -- we have been planning a trip to England, which we're looking at the date of the 15th for that. |
| The Court: | All right. |

24

foregone his attempt to settle permanently in the United States. The Court, however, can only

speculate as to the Debtor's intentions leading up to his family's December 2010 trip to Europe

and what his intentions are with respect to returning to the United States. Without full and

candid disclosure from the Debtor, the Court is faced with an incomplete factual record, and

doubts exist as to whether the Debtor may have intentionally or mistakenly misled the Court.

The Debtor refuses adamantly to return to the United States. The Court, nonetheless, must

explain its rationale for declining to issue a final, written Order that disposes of the Debtor's

Motion to Revoke Recognition.

### III. CONCLUSIONS OF LAW

#### A. The Court May Revisit Recognition

#### 1. Courts Grant Leniency to *Pro Se* Litigants

The pleadings filed by the Debtor have not been a model of clarity, which is

understandable because the Debtor appears *pro se*. *Pro se* complaints are to be construed

liberally by the courts. *Thompson v. N.M. Student Loan Guar. Corp. (In re Thompson)*, 329 B.R.

145 (Bankr. E.D. Va. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). The Debtor

will be held to "less stringent standards than formal pleadings drafted by lawyers," thus making

the Debtor's deficiencies less determinative. *Kerner*, 404 U.S. at 520.

---

| Mr. Loy: | But we haven't booked anything yet. But we also have some things with our family that we're trying to resolve with regards to our future, and with the -- just so I'm clear . . . . |
| The Court: | Well, I would expect -- what I really think -- we'll schedule it for a little bit earlier at the availability of all the parties. What I'm really going to do is announce my decision. |
| Mr. Loy: | Correct. |
| The Court: | But you need to be here for that decision. |
| Mr. Loy: | Right. I understand that. |

(Nov. 19, 2010 Hr'g Tr. at 29:25-30:2.) The Court's impression was that the Debtor and his family were travelling to the United Kingdom for a holiday vacation and would return to Virginia. There was nothing that suggested that the Debtor and his family were relocating to France.

While it is axiomatic that leniency is afforded to *pro se* debtors, the grant of leniency is

not without its limitations. In order to promote efficiency and preserve the integrity of the

system, courts may not allow *pro se* litigants to deviate completely from the rules of procedure

or court-imposed deadlines. *Hopkins v. Educ. Credit Mgmt. Corp. (In re Hopkins)*, Case No. 08-

5012-SCS, 2009 WL 1789334, at *9-*10 (Bankr. E.D. Va. June 22, 2009) (citing *McCain v.*

*Educ. Credit Mgmt. Corp. (In re McCain)*, 353 B.R. 452, 464-65 (Bankr. E.D. Va. 2006)). *Pro*

*se* litigants are expect to familiarize themselves with the courts' rules so that the rules can be

"consistently and fairly appl[ied] . . . to all parties, whether they are *pro se* or represented by

counsel." *In re McCain*, 353 B.R. at 464-65.

The Debtor has been thrashing around trying to find the correct legal theory and pleading

structure to get relief from the Recognition Order. The Debtor's pleadings are vague,

conclusory, and disjointed. The Court has undertaken considerable effort to grasp what the

Debtor is stating in his papers and to understand the relief that he seeks.

As discussed below, § 1517(d) affords the Debtor the possibility of relief. The Debtor

wants to revisit the Recognition Order, which is two years old and has never been appealed. The

record makes it clear that Judge St. John gave the Debtor a full, complete, and fair opportunity at

trial. The Court must exercise its discretion to determine whether revisiting recognition is

warranted.

### 2. The Finality Of A Determination Of Recognition And The Plain Meaning § 1517(d)

Whether the Court may revisit its prior recognition determination rests on the meaning of

§ 1517(d) of the Code, which states:

> The provisions of this subchapter do not prevent modification or termination of
> recognition if it is shown that the grounds for granting [recognition] were fully or
> partially lacking or have ceased to exist, but in considering such action the court

26

shall give due weight to possible prejudice to parties that have relied upon the
order granting recognition. A case under this chapter may be closed in the
manner prescribed under section 350.

11 U.S.C. § 1517(d) (2006). When interpreting statutes, "'a court should always turn first to one,

cardinal canon [of construction] before all others': the plain meaning rule." *Ayes v. United*

*States Dep't of Veterans Affairs*, 473 F.3d 104, 108 (4th Cir. 2006) (quoting *Conn. Nat'l Bank v.*

*Germain*, 503 U.S. 249, 253, (1992)). The "plain meaning rule" dictates that "[courts] must

presume that 'Congress says in a statute what it means and means in a statute what it says . . .'"

*Ayes*, 473 F.3d at 108 (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*,

530 U.S. 1, 6 (2000)). This rule should not be applied if the statute is unclear because doing so

may produce an absurd result, but when the statute's language is unambiguous, a court's inquiry

into its meaning is complete. *Stinson v. BB&T Inv. Servs.* (*In re Stinson*), 285 B.R. 239, 243,

(Bankr. W.D. Va. 2002). There is nothing more persuasive as to the statute's purpose than its

words, which "must ordinarily be regarded as conclusive." *In re Stinson*, 285 B.R. at 243

(quoting *Griffen v. Oceanic Contractors, Inc.*, 458 U.S. 564, 570 (1982)).

Section 1517(d) is unambiguous. The Court need not apply any less reliable method of

statutory interpretation. Section 1517(d) permits courts to modify or terminate recognition under

certain conditions. The actual language dictates that the subchapter's provisions "***do not prevent***

modification or termination," which indicates that, although revisiting a recognition

determination is not mandatory, it is within the Court's discretion to do so.  11 U.S.C. § 1517(d)

(emphasis added). Accordingly, the Court has the discretion to revisit the Recognition Order.

Section 1517(d) provides that to modify or terminate recognition there must be a

"show[ing] that [1] the grounds for granting [recognition] were fully or partially lacking or [2]

have ceased to exist." 11 U.S.C. § 1517(d). Section 1517(d) provides a two part disjunctive test.

A Court may modify or terminate recognition if (1) the grounds for granting recognition "were fully or partially lacking" or (2) the grounds for granting recognition "have ceased to exist." 11 U.S.C. § 1517(d). In any case, either prong, resting alone, is sufficient to enable the court to modify or terminate recognition. In order to modify or terminate recognition, the reviewing court that evaluates the presence or absence of either one of those prongs may consider new evidence and it is not limited to considering only the evidence that was or ought to have been available at the time the court granted recognition.

In this case, the Debtor stipulates that circumstances have not changed for him since the Recognition Order was issued. Thus, the second condition, that "grounds . . . have ceased to exist," is eliminated. The only viable contention is that crucial facts "were fully or partially lacking" when the Recognition Order was issued. The Debtor's position is weakened by the fact that none of the relevant facts were "lacking" at the time of the grant of recognition. Not only was all information of consequence available at that time but the Debtor had actual and continuous possession of the information at the November 2009 hearing that he has since presented to the Court. Accordingly, the Court has the discretion to deny justifiably the Debtor's various motions requesting revocation of recognition. If the Court were to do so, however, then it would punish the Debtor for his lack of legal expertise, and more importantly, deprive the Debtor of the flexibility allowed by § 1517(d).

Support exists for the Court's interpretation and application of § 1517(d) in the context of the finality of recognition. While other courts that have modified or terminated recognition do so for different reasons than the Debtor presents in this case, those decisions, nonetheless, illustrate the mechanisms and policy behind revisiting recognition determinations.

28

In *In re British Am. Ins. Co.*, the court allowed facts related to the debtor's COMI to be admitted well after the recognition proceedings had commenced. *In re British Am. Ins. Co.*, 425 B.R. 884 (Bankr. D. Fla. 2010). Although the changes were addressed ***before*** the court's final determination, the policy behind that court's decision is applicable here. The court held that § 1517(d) allows courts to adjust their rulings based on changed circumstances because the provision "exhibit[s] a policy that the recognition process remain[s] flexible, taking into account the actual facts relevant to the court's decision rather than setting an arbitrary determination point." *Id.* at 910. Responding preemptively to concerns about the inconsistency and inefficiency of revisiting past decisions, the court instructed that recognition is actually ***more*** consistent when courts review the latest available evidence. *Id.* The Court is prepared to review the latest evidence available but only on the basis of full disclosure and a completely transparent record. As noted below, each are lacking at this stage of the case.

*British Am. Ins. Co.* addressed the changed circumstances, or "grounds . . . ceas[ing] to exist," prong of § 1517(d), while the Debtor in this case relies on the "fully or partially lacking" prong of § 1517(d). Nonetheless, that court's articulation of the provision's purpose favors the Debtor. The court reasoned that the recognition process must remain flexible to ensure that courts have the best chance of reaching meaningful results.

Two additional cases present similar options. The first is *In re Ernst & Young, Inc.*, 383 B.R. 773 (Bankr. D. Colo. 2008). In examining the issue of finality, the court concluded that its recognition ruling was merely a "summary determination." *Id.* at 781. The court reasoned that § 1517(d) allowed it to make a decision that was not "full and final," and invited courts to modify or terminate that decision in the future. *Id.* This forward-looking rationale can be applied

retrospectively, such that this Court's prior recognition ruling may be categorized as a "summary determination" awaiting further review.

In re Oversight & Control Comm'n of Avanzit, S.A., 385 B.R. 525 (Bankr. S.D.N.Y. 2008), also addresses the finality of recognition. That court held that a suspension proceeding before a Spanish court met the requirements for recognition. In re Oversight & Control Comm'n of Avanzit, S.A., 385 B.R. at 539. The court stated that "Chapter 15 recognizes that the status of the foreign proceeding can change, and the change can affect the right to recognition **before or after** it is granted." Id. at 533 (emphasis added). The court perceived an ever-present potential for change that prevented recognition from being set in stone. Id. at 533-34. As in the aforementioned cases, the Avanzit court addressed conditions "ceasing to exist," as opposed to facts that were "fully or partially lacking," but that court's ruling was premised on the notion that recognition determinations are malleable, and, as facts warrant in a specific case, the court may revisit recognition. Id. at 533 (citing 11 U.S.C. § 1517(d)) ("Chapter 15 recognizes that the status of the foreign proceeding can change, and the change can affect the right to recognition before or after it is granted."). Therefore, the Court **may** revisit recognition.

### B. The Court Will Not Revisit Recognition On An Incomplete Record

### 1. The Laches Defense Does Not Bar The Debtor From Asserting His Claim At This Time

A party opposing the decision to revisit recognition may assert the defense of laches because over three years have passed since the entry of the Recognition Order and much has occurred during that time. "Laches is an equitable defense that is properly invoked when 'unreasonable delay in pressing one's rights . . . prejudices the defendant.'" In re Varona, 388 B.R. 705, 717 (Bankr. E.D. Va. 2008) (quoting Cook v. City of Chicago, 192 F.3d 693, 695 (7th Cir. 1999)). To assert successfully a laches defense, the moving party carries the burden of

proving: "'(1) lack of diligence by the party against whom the defense is asserted, and (2)

prejudice to the party asserting the defense.'" *White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990)

(quoting *Costello v. United States*, 365 U.S. 265, 282 (1961)). These elements are articulated in

such a way as to target a complainant's opportunity to file an initial lawsuit. Those elements,

though, leave open application of the rule to a litigant filing a motion to revisit a past ruling, as is

the case here.

The first element focuses on the nature of the Debor's delay in filing the first of many

motions to revisit the Recognition Order. Laches is applied on a "sliding scale," so the longer

the Debtor delayed, the less prejudice that the English Trustee must show in order to prevail on

the defense. *Smith v. Caterpillar, Inc.*, 338 F.3d 730, 734 (7th Cir. 2003). The Court entered the

Recognition Order on December 18, 2007, but the Debtor failed to ask that the Court revisit its

ruling until September 15, 2009. A delay that long is arguably significant, but it is not

determinative. No bright line rule regarding a specific timeframe exists, and all the facts of each

particular case must be evaluated. *Daniel*, 909 F.2d at 102 (citing *Nat'l Wildlife Fed'n v.

Burford*, 835 F.2d 305, 318 (D.C. Cir. 1987)).

Ultimately, courts look at whether or not the delay, however long, was excusable. *In re

Texas Reds, Inc.*, No. 11-04-15995 JA, 2010 WL 398918, at *6 (D. N.M. Jan. 15, 2010) (citing

*Cave v. Cave*, 81 N.M. 797, 802 (1970), *Pratt v. Parker*, 57 N.M. 103 (1953)). A "lack of

diligence" exists where "the plaintiff delayed inexcusably or unreasonably in filing suit."

*Daniel*, 909 F.2d at 102 (quoting *Burford*, 835 F.2d at 318). Given the method that courts use to

analyze the first prong of the laches test, the leniency afforded to *pro se* litigants is especially

applicable. A *pro se* litigant's ignorance of the rules may constitute excusable neglect. *United

States v. One (1) 1979 Mercedes*, 651 F. Supp. 351 (S.D. Fla. 1987). A delay may be deemed

31

inexcusable or unreasonable only after the complainant "discovers or with reasonable diligence could have discovered the facts giving rise to his cause of action." *Daniel*, 909 F.2d at 102 (citing *Ward v. Ackroyd*, 344 F. Supp. 1202, 1212 (D. Md. 1972); *Knox v. Milwaukee County Bd. of Elections Comm'rs*, 581 F. Supp. 399, 402 (E.D. Wis. 1984)).

That the Debtor did not originally understand the complexities of a Chapter 15 does not speak necessarily to his level of diligence. Chapter 15 is new enough that attorneys and judges are still working through the subtleties and nuances of legal issues like the one at hand. In fact, the English Trustee, even with representation, failed to file for recognition until over a year after the Debtor was adjudged a bankrupt by the English Bankruptcy Court Order. Furthermore, given the Debtor's multiple requests for the Court to alter, amend, or modify and make haste with its final ruling, there is no reason to conclude that the Debtor waited an inexcusable amount of time to file his motion once he actually discovered the implications of § 1517(d). As noted above, every party to this proceeding is aware of the Debtor's absolute resolve to get out of these bankruptcy proceedings.

Finally, "[l]aches is not favored absent inexcusable *neglect*." *In re Texas Reds, Inc.*, 2010 WL 398918, at *6 (emphasis added) (quoting *Cave v. Cave*, 81 N.M. at 802 (citing *Parker*, 57 N.M. at 111)). The entire record makes clear—and the Court finds as a finding of fact—that the Debtor *never* wanted to be adjudged a bankrupt, so the Debtor is not so much asserting a claim as he is seeking the chance to *defend* properly his position. The Debtor's motions to revisit recognition were reactive rather than proactive, meaning that he was never truly in control of the proceedings. The Debtor's delay to date, therefore, can hardly be categorized as neglect. The Debtor appears to be using every idea available to extricate himself from his bankruptcy case.

32

The second aspect of the laches defense involves an examination of the potential effects of the delay, if any, on the English Trustee. Those effects must result in prejudice to the English Trustee, which is defined as, among other things, "harm caused by detrimental reliance on the plaintiff's conduct." *Daniel*, 909 F.2d at 102 (citing *Gull Airborne Instruments, Inc. v. Weinberger*, 694 F.2d 838, 844 (D.C. Cir. 1982)). The alleged prejudice "must be a result of the delay itself, not merely a result of the suit being brought or the defendant losing the suit." *In re Texas Reds, Inc.*, 2010 WL 398918, at \*6 (quoting *Magnolia Mountain v. Ski Rio Partners*, 139 N.M. 288, 297 (2005)).

The Court is unable to discern any prejudice to the English Trustee other than the normal litigation risk: winning or losing on the merits of the present motion. The English Trustee, significantly, has neither alleged nor argued laches. The Court is examining laches because a successful argument that laches bars revisitation would preclude the Court from reopening the record. It is up to the Debtor as to whether or when the Court will reopen the record—the Debtor must make himself available to the Court in person. The time period in which the Debtor can do so has already begun to run, and it will not run for an indefinite period of time.

**2. Revisiting Recognition Is Ultimately A Search For The Truth**

On the specific and unique facts presented here, the Court has a duty to allow the Debtor to present all the available evidence that is crucial to his case. "Because the trial process is, at its heart, a search for the truth, courts are loath to exclude otherwise admissible evidence because of untimely production . . ." *Farmers State Bank v. Simpson* (*In re Simpson*), No. 08-8119, 2010 WL 1521309, at \*1 (C.D. Ill. April 14, 2010).

This flexibility, of course, is not absolute. Without any time restraints, parties could drag out litigation endlessly by admitting evidence long after courts have reached a decision.

33

Addressing the outer scope of this philosophy, the court in *Simpson* explained that evidence may

be excluded if (1) the producing party exhibits fraud, dishonesty, or bad faith; or (2) admission of

the evidence would prejudice the other party. *In re Simpson*, 2010 WL 1521309, at *1. The

English Trustee has not argued that the Debtor's delay was fraudulent, dishonest, or the result of

bad faith. The Debtor's mistake may have been the result of incompetence but his *pro se* status

explains that fact, at least in part. As is clear from this opinion, however, the Court expects

further disclosure and explanation before it will revisit recognition, and the time frame for this is

not without limit. The Debtor is on notice that he must act with dispatch.

### C. Disposition Of The Pending Motion For Recognition

On November 19, 2010, and again on December 14, 2010, the Court stated that it would

terminate recognition. (Nov. 19, 2010 Hr'g Tr. at 27:21-28:8; Dec. 14, 2010 Hr'g Tr. at 93:11-

12.) The Court also stated that, as a corollary to terminating recognition, it would dismiss the

Chapter 7 Proceeding (Nov. 19, 2010 Hr'g Tr. at 27:25-28:1; Dec. 14, 2010 Hr'g Tr. at 94:1-4.)

It is now clear to the Court that those statements were premised on an incomplete and

inaccurate factual record. The Debtor appeared in person before the Court on numerous

occasions. At each appearance, he argued that Hampton, Virginia was his home and where he

intended to remain. The Court believed and relied on these representations. These

representations may not have been entirely accurate in light of subsequent developments.

In announcing its decision, the Court was firmly of the opinion that the Debtor intended

to remain in Hampton, Virginia, pursuing business opportunities and raising his family in

Hampton, Virginia. In scheduling the December 14, 2010 hearing in a different Division of this

Court—Norfolk rather than Newport News—the Court was accommodating the Debtor's stated

34

desire to make a trip to the United Kingdom to visit his family. (Nov. 19, 2010 Hr'g Tr. at 29:25-30:2.) At no time did the Debtor indicate that he intended to relocate to France.

In the Court's mind, this fact is material and should have been disclosed. The Debtor is asking the Court to exercise its discretion to afford him an extraordinary remedy: revisiting an Order over two years old and revoking that Order. Terminating recognition would require the Court to revisit and essentially abrogate a reasoned and meticulously detailed decision issued by a colleague in this Court. It would also potentially frustrate the ruling of a colleague in England, Judge McCahill, QC, and undermine one of the purposes of Chapter 15: comity and cooperation.

> [Chapter 15] is intended to promote 'cooperation between United States courts, trustees, examiners, debtors and debtors in possession and the courts and other competent authorities of foreign countries; . . . fair and efficient administration of cross-border insolvencies that protects the interests of all creditors and other interested entities, including the debtor; [and] the protection and maximization of the debtor's assets . . . .'

*In re Oversight & Control Comm'n of Avanzit, S.A.*, 385 B.R. at 532 (quoting *In re Bear Stearns*, 374 B.R. at 126 (Bankr.S.D.N.Y.2007)); *accord* 11 U.S.C. § 1501(a).

To be clear, the Court is prepared to address the merits of the Motion to Revoke Recognition, although this may require modifying a well reasoned decision of my colleague on the bench of this Court and may impact a decision of another colleague in England. The Court, however, will revisit recognition only upon a full and complete record that is accurate and transparent in all material respects. To terminate recognition on an incomplete record would demonstrate a marked lack of respect for my colleagues on the bench and improperly frustrate the task assigned to the English Trustee.

Simply put, the Court is not certain that the Debtor has been candid at prior hearings. At this time, the Court believes it may have been misled—whether the Debtor did so deliberately or

not remains to be established. The Court is unwilling to exercise its discretion to afford an extraordinary equitable remedy to the Debtor on the state of an incomplete and uncertain record.

It is important to reiterate that the Court convened a Status Hearing on February 25, 2011 to address these issues and to afford the Debtor the benefit of an additional opportunity to complete the record. (Doc No. 158.) The Debtor was adamant that he was not returning to the United States, essentially substituting his judgment for that of the Court on this point. (Feb. 25, 2011 Hr'g Tr. at 6:2-6.) The Debtor—arguing *still* that his COMI was Hampton, Virginia— stated that the Court had sufficient information and facts its disposal to render a ruling that terminated recognition. (Feb. 25, 2011 Hr'g Tr. at 5:10-6:1.) The Debtor **demanded** that the Court issue a written ruling consistent with the Court's statements from the bench at the November 19, 2010 and December 14, 2010 hearings. The Court will not exercise its discretion to revisit recognition unless and until it is satisfied that the Debtor has disclosed accurately all pertinent facts and that the record is accurate and truthful in all respects.

## IV. CONCLUSION

The Debtor has requested extraordinary relief. The Court has determined that it has the discretion to afford the Debtor the relief that he seeks. The Court has further determined that the record is not sufficiently articulated to warrant the Court's exercise of discretion on this matter at this time in favor of the Debtor. The Court has afforded the Debtor the opportunity to supplement the record, which the Debtor has refused. Accordingly, it is ORDERED as follows:

1. The Motion to Revoke Recognition is DENIED WITHOUT PREJUDICE. The Debtor may file pleadings to revisit this ruling if and when he is prepared to complete fully the record.

2. The Chapter 7 Trustee is ORDERED to recommence normal administrative

36

proceedings in the Chapter 7 case.

Separate Orders will issue.

This Memorandum Opinion and its accompanying Orders do not constitute a final

judgment on the merits of this case. Therefore, should the Debtor wish to appeal these Orders,

he must comply with the applicable provisions of 28 U.S.C. § 1292, which governs interlocutory

appeals.

DATED:

3-30-2011

FRANK J. SANTORO
United States Bankruptcy Judge

NOTICE OF JUDGMENT OR ORDER
Entered on docket
MAR 3 0 2011

Upon entry of this Memorandum Opinion, the Clerk shall forward a copy to Jonathan A.

Loy via e-mail at jonloy@email.com; and via first class mail, postage prepaid, to Jonathan A.

Loy and Susan J. Loy, Moulin Begasse, 56320 Mesian, France; Douglas M. Foley, Esq.,

McGuireWoods LLP, World Trade Center, Suite 9000, 101 West Main St., Norfolk, VA 23510-

1655; Kenneth N. Whitehurst, III, Esq., Office of the U.S. Trustee, 200 Granby St., Room 625,

Norfolk, VA 23510; David R. Ruby, Esq., ThompsonMcMullan, P.C., 100 Shockoe Slip,

Richmond, Virginia, 23219; Julian A. Bryant, Jr., Esq., Evans & Bryant, PLC, 101 Parks

Avenue, Suite 301, Virginia Beach, VA 23451; Leo J. Perk, Esq., Law Offices of Leo J. Perk,

P.C., 352 McLaws Circle, Suite 1, Williamsburg, VA 23185; Joseph L. R. Pinard, 107 Binnacle

Lane, Newport News, VA 23602; Christopher L. Perkins, Esq., LeClair Ryan, Riverfront Plaza,

East Tower, 951 East Byrd Street, P.O. Box 2499, Richmond, VA 23218-2499; and to Shaunte

M. Hurley, Esq., Taylor & Walker, P.C., 555 E. Main Street, Suite 1300, Norfolk, VA 23510.